## JAMES MULLIN v. VT. MUTUAL FIRE INS. CO.

### Insurance. Agent. False Statements in Application.

1. APPLICATION WRITTEN BY ONE EMPLOYED BY AGENT—FALSE STATEMENTS—ESTOPPEL. The plaintiff signed an application for insurance, which was written by B., " an insurance broker," in the office of the defendant's agent. The defendant returned the application to its agent for further information as to the occupancy and ownership of the property insured. The agent handed it to B., requesting him " to go and get the reply." B. took it, saw the assured, and, although he learned from him that he was only a conditional vendee in possession of the personal property, and the vendor, the tenant of the store in which it was situated, wrote in it that the assured was both the owner and tenant. B. was neither appointed nor recognized as agent by the company, or by its agent; Held, that the writing of the false statements, in legal significance, was the act of the agent; that the knowledge of B. was the knowledge of the company, and that it was estopped from claiming a forfeiture; that the defendant could not avoid its responsibilities by repudiating the acts of its agent, though done in part by a person employed by him.

2. KNOWLEDGE, WHEN ACQUIRED. It is immaterial when B. acquired his knowledge of the situation of the property, if he knew at the time he wrote the wrong statements.

3. PROOF OF LOSS—FALSE REPRESENTATIONS. The property was insured in two companies. False representations made by the plaintiff to the defendant's agent, who acted in the matter of the settlement of the loss, in effect, that the other company had adjusted and paid its loss, were immaterial.

4. PROOF OF LOSS—INVENTORY—FRAUD. CHARGE—ERROR. It was the plaintiff's duty to supply the defendant with a truthful inventory; and, while in completing his proofs of loss, he could properly employ his wife to make an inventory of household effects destroyed, but by swearing to one thus made, not knowing
8

whether it was correct, and without scrutiny, which inventory contained many false statements calculated and intended to work a fraud, he thereby made the fraud his own. And it was error for the court, on request, to refuse to thus charge the jury, and to put it on the theory of honest intention, as: "Did he intentionally present a sworn statement of loss that was false," etc.

Assumpsit on an insurance policy. Plea, the general issue. Trial by jury, September Term, 1884, Veazey, J., presiding. Verdict for the plaintiff. The clause in the policy relating to adjustment of losses contained the following:

"If there be any misrepresentation, fraud, or false swearing, the claimant shall forfeit all claim by virtue of his policy."

The application contained the following:

"The said applicant hereby covenants and agrees to and with said company that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, and value of the property to be insured, so far as the same are material to the risk, and in case any matter material to the risk is not fully stated, or in any material thing is misrepresented, the policy issued hereon shall be void."

A negative answer was given by the jury to the following questions:

"Was there any fraud, false swearing, or intentional misrepresentation in the proof of loss as presented by the plaintiff?"

"Did Butler in soliciting the insurance, and writing the answers to questions in the application, act in his own behalf, independently of any employment by Manley to aid him in procuring the insurance and preparing and forwarding the application?"

The building in which the property was insured consisted of a barn and two story building at West Rutland, of which the lower story was occupied as a store, and the upper story by the plaintiff as a tenement, in which he and his wife lived, and Daniel Mullin, mentioned in the policy, was his brother and lived with him as a boarder. The furniture, clothing, etc., insured, were in the upper story.

It appeared that after the application had been made out and forwarded to the company, the company returned it to J. E. Manley, their agent at West Rutland, with the following additional questions: " What kind of goods are kept in this store? by whom owned? are they insured? where? What part of the building are the household furniture, etc.? Are there any other tenants in the building?" The first printed question in the application, namely: " Where situated and by whom owned and occupied, and for what purpose?" was answered as follows: " West Rutland—James Gilmore—occupied as store and tenement by James Mullin." In answer to said additional questions, an addition was made to this answer in the words, " and brother, merchandise, drugs, and groceries—Mullin Bros., owners—stock insured in Lycoming Insurance Co."

It appeared, that one Michael Carrigan was the owner of the stock of goods in the store, and that he was the tenant of the store, and his tenancy was not disclosed by the application. Said Carrigan had previously bought the stock of goods at sheriff's sale, and Mullin Bros. were running the store as clerks for him under an agreement that when they should pay him the amount of the indebtedness upon which the goods were taken and sold, they should become theirs.

The plaintiff gave evidence tending to show that the application was taken by one J. D. Butler; and claimed that said Butler in doing so acted as agent of the company, and that the knowledge which he claimed that said Butler had at the time of the application of the false statements and concealments as to the ownership of the goods in the store, the tenancy of the store by Carrigan, and the use of the building for the keeping and sale of intoxicating liquors, charged the defendant company with knowledge thereof, and took from it the defences which it would have had but for such knowledge on the part of said Butler.

J. D. Butler testified that he supposed that he was the agent of the defendant.

Mr. Manley, called by the defendant, testified that in January, 1879, he was agent of the defendant company at West Rutland, and that the company had no other agent there; that he knew said Butler, and that Butler was at the time a student-at-law in his office, had been there about two years and did some clerical work for him, and solicited insurance as a broker; that Butler was not agent for said company, nor his partner in respect to his (Manley's) agency for said company; that he (Butler) was an insurance broker, and as such engaged in soliciting applications and placing the insurance through agents of insurance companies, and receiving therefor from the agents a commission on each application; that the store of the Mullins was about sixty rods from the office of said Manley; that said Butler did insurance business by looking up applications and placing them through Manley in the said defendant company, and through agents for other companies, and got his compensation for insurance placed through Manley, by Manley's paying him $1.50 on each application, and that Manley got his pay from the company by receiving $2.00 for each application; and in reference to those applications taken by Butler, the said Manley did the correspondence with the company; that Manley had been appointed agent to the company previous to that time; that he saw the application before it went away from the office to the company, at his office; that said Manley's name was signed to the application by Butler in Butler's handwriting, and was made upon one of the blanks of the company furnished to said Manley by the company. Said Manley further testified, that said application was shortly afterwards returned to him by the company with said additional questions written on the margin; that upon the receiving back of said application, he handed it to Butler and requested him to go and get the reply; and that Butler took the same and shortly after brought it back with the additional answers in Butler's handwriting; that he knew that said Butler had once worked several days on the Mullin Bros.' books at their store.

As to the time when said Butler learned or knew of the situation of the property, he stated in his deposition, that in December, 1878, he was employed by James Mullin to examine the books of Mullin Bros., and that at that time he told

him of the arrangement between Carrigan and Mullin Bros. in relation to the property insured. The application was approved January 10, 1879.

The defendant's evidence tended to show that the time referred to in Butler's deposition, when he was at work on the books, was some three months prior to the time of taking the application.

Its evidence also tended to show that the plaintiff was guilty of fraud in his proofs of loss, and of false swearing.

The plaintiff conceded that the numerous articles of silver ware which were represented in the proof of loss as lost in the fire, were not lost; but plaintiff's evidence tended to show that they were inserted in said proof of loss purposely by his wife; and plaintiff testified he supposed they were lost, when in fact they were not. It appeared that they were found by officers upon a search-warrant on June 11th, 1879, at the house of the plaintiff's father-in-law, where the plaintiff was then living.

At the close of the testimony, the defendant moved the court to direct a verdict, assigning: That false answers were made in the application, (1) as to the kind of goods kept in the store,—as intoxicating liquors; (2) as to the ownership; (3) as to the occupancy; and (4) that there was fraud and false swearing in the proof of loss. The court denied the motion.

The defendant requested the court to charge:

" 4. There is no proof that Butler knew that Carrigan was tenant or occupant of the store; therefore the claim of knowledge by him as an answer to the concealment in the application of that fact cannot be made."

" 5. That if the plaintiff falsely represented to Mr. Fletcher, the adjuster of the defendant company, that the Lycoming Insurance Company had settled and paid the loss under the policy of the latter company upon the store property, claimed to have been lost by the same fire, with the intent thereby to induce a settlement of the loss here in question, that was such misrepresentation as would, under the

terms of the policy, work a forfeiture of all claim on the part of the plaintiff by virtue of the policy."

" 6.   That if the plaintiff in his proof of loss adopted any false statement of his wife with reference to the fact of loss, or the amount or value of property claimed to have been lost, without attempting to know or to investigate the truth of such matter for himself, he thereby became responsible for such statement as misrepresentation within the meaning of the policy, to the extent to which he would have been able by the exercise of reasonable care, to discover the truth in respect to such matters, if he had undertaken to do so."

" 7.   That if the plaintiff in his proof of loss, adopted any false statement of his wife with reference to the fact of loss, or the amount or value of property claimed to have been lost, without attempting to know or to investigate the truth of such matters for himself, he thereby became responsible for such statement as misrepresentation, within the meaning of the policy."

The court charged as to the agency of Butler:

Manley says in substance that he was a law student in his office; been there about two years; that he got his living by teaching and by clerical work, as he could get jobs, and by soliciting insurance as a broker.   He says when he brought an application to him and a policy was issued, he paid him $1.50 for it.   He denies he had any other relation with him in the insurance business, or that Butler worked for him in it, or had anything to do with his agency for this company. The tenor of his testimony is that Butler acted in his own behalf in soliciting insurance; and he paid him on each application the same as he would any broker who brought him an application; that Butler was not his clerk or his partner in anything that he did in the matter of insurance.   As a law student in his office, he says, in substance, he did some things for him in that connection.   This is the substance of his testimony, as I recollect it.

It is denied in evidence, and there is nothing to show, that Manley had any authority or right to delegate his agency to another.   He could not appoint an agent of this company, but he could employ a clerk or partner to help him in his insurance business, and work done by the clerk or partner for the agent could be done in such a way or under such circumstances as to have the same binding force

on the company as though the agent had done it all. * *
Butler goes, and brings back·an application, Manley looks
it over, puts his name on it as agent, and sends it forward,
and a policy is issued thereon. In the absence of any fraud,
that application would stand just the same as though Manley
had done the whole thing in person, provided the act was
done under such circumstances that the company knew or
ought to have known that a clerk would be employed by
and to act for the agent Manley, in such a manner and in
such a way.

Take this case: Mr. Manley is a lawyer at West Rutland;
has an office there for doing law business. This company
appoints him their insurance agent. There is a large vil-
lage there, a large constituency for this kind of business.

Now, the only question is whether the company ought to
have known, when they appointed him, that in the perform-
ance—fair performance—of his duties as their agent there, he
would necessarily use a clerk to aid more or less in the
carrying out of the business of that agency. * * * * *

If Butler had no agency for the company, and had no
employment by Manley to solicit this insurance or aid
Manley in it, but went on his own motion, acting independ-
ent of the company and its agent, Manley, and took this
application as his own sole transaction * * * * and
Manley took it from him as Mullin's application in the same
·way he would have taken it if Mullin had brought it in to
him, as an application made out by Mullin in person in
which he, Manley, had taken no part by himself or others,
then the company was not affected by any misrepresenta-
tion made to Manley by Mullin, but had and have a right to
stand on it as made, and to take advantage of its material
false statement the same as though Mullin had made it ·all
out himself, without additional statement to any one."

Butler's knowledge as to title of property:

" I do not understand that the plaintiff is definite in say-
ing he told Butler the same at the time of the application.
It is for you to say. If Butler previously knew how the
title stood, etc., and there had been no change in it, it would
not have been necessary for the plaintiff to go into detail at
the time of the application. If he had said to Butler, ' You
know just how the title stands; it is just as we talked when
you were at work on my books,' that would have been suffi-

cient. If the plaintiff at the time of negotiating the application with Butler said enough to him to give him fairly to understand that the title had not been changed since he knew about it, but stood just the same, that was sufficient. Butler should have put it down as the fact was; and the plaintiff should not suffer because he did not, provided Butler stood in such relation to Manley as to bind the company as above explained."

Fraud in proof of loss:

" The plaintiff had a proof made out, swore to it, and presented it within the thirty days. It turns out that he embraced some articles not lost. And it is claimed he put values too high. It was the duty of the plaintiff to present an honest statement of his loss; knowingly and intentionally including in it articles not lost, or putting value to articles lost too high, for the purpose of getting more than entitled and thus defraud the company, would work a forfeiture of all claim.

" There is no dispute on this point. The question is one of fact. Did he do this? Here is the issue. Did he intentionally present a sworn statement of loss that was false, that contained misrepresentations, that were fraudulent?

" This question embraces two questions, (1) Whether the statement was false in fact? (2) Was that intentional or by mistake?

" The plaintiff explains how the statement was made and what he said when he presented it; says he did not know the silver ware was saved; and told Fletcher (agent to adjust the loss) the silk dress was saved and should be deducted, although it was included in the statement. Fletcher denies this. And the defendant has put in evidence such facts as it is claimed tend to show misrepresentation, fraud, and false swearing by the plaintiff.

"There is considerable circumstantial evidence on both sides bearing on this point of good faith, and it is upon the whole that you are to say whether the errors such as you find exist in the proof of loss were mere oversights, mistakes, inadvertences, errors of judgment as to price of values, honest overestimates, or whether there was substantial misrepresentation, fraud, or false swearing.

" The plaintiff had the right to have his wife or any other person make the paper. But that did not relieve him from

obligation to be honest himself in adopting it and swearing to it. He is not responsible for any attempted frauds of his wife or others, to which he was not a party."

The other facts are sufficiently stated in the opinion.

*James C. Barrett,* for the defendant.

1. No relation, either of dealing or of knowledge, between Butler and the company having been shown, but only the *acting* of Butler, the court erred in what it said in its charge as to Butler's being *agent of the company,* namely: "If you are fairly satisfied upon the evidence, *that Butler was the defendant's agent,*" etc., and other similar expressions.

*Was there any partnership?*

There was no evidence nor even claim that there was any partnership which, *as such,* was the agent of the company.

If, therefore, Butler derived any powers, it was not as a member of a partnership which was agent, but must have been as partner of an agent.

But Butler does not pretend that he had any agency *derivative* through Manley. He said he supposed he was *as much* agent as Manley—not as expressed by the court, that he had any *sub-agency.*

What basis of fact is there in all this upon which to submit to the jury any proposition upon the idea of Butler having powers derived from a *partnership?*

And even if there had been any basis of *fact,* the matter would, in point of *law,* come to just this: That Butler derived powers by virtue of being a partner of an agent who had no authority to delegate his powers—and who, even if he had had such authority, was not even claimed to have exercised it.

The record is indisputable against the idea of a *clerkship.*

Butler was an *insurance broker,* and brought the application from Mullin, in the character of *applicant,* to Manley, the *agent* of the company.

2. Now, even if evidence had been admissible that Mullin told Butler, at the time of the application, what the title was, evidence was not admissible that he had told him, *some three months before*, and *while Butler was in his employment*, what the title was.

Of course knowledge acquired by Butler at that time, and under those circumstances, would not bind the insurance company. Wood Ins. s. 404; 30 Mo. 63, 71.

3. The insured was bound to know whether there was any agency, and to know the scope of the agency. *White* v. *Landon*, 30 Vt. 599; *Sprague* v. *Train*, 34 Vt. 150; *Goodrich* v. *Tracy*, 43 Vt. 314; *Cooper* v. *Farmers' Mutual F. Ins. Co.* 50 Penn. St. 299; Wood Ins. 652, s. 397. And to prove it. Wood Ins. 649, s. 396; Ib. 663, s. 399.

The representations being *warranties*, the agent's knowledge is unavailing. *Tebbetts* v. *Hamilton Mut. Ins. Co.* 3 Allen, 569; *Sheldon & Co.* v. *Hartford F. Insurance Co.* 22 Conn. 235; *Cooper* v. *Ins. Co., supra.*

Want of knowledge or of recollection, no excuse. *Towne* v. *Fitchburg Mut. F. Ins. Co.* 7 Allen, 51; *Wilbur* v. *Bowditch Mut. F. Ins Co.* 10 Cush. 446; Wood Ins. s. 397; 6 Cush. 42; 2 Denio, 75; 3 Allen, 569.

The burden is on the party claiming estoppel to show the facts operating as such. Mullin must show that Butler was agent, or partner, or clerk—or something else belonging to the company; and that, as such, he had full knowledge. *Smith* v. *Saratoga Co. Mut. F. Ins. Co.* 3 Hill, 508; *Garlinghouse* v. *Whitewell*, 51 Barb. 208.

The act of agent of applicant is the act of applicant. Wood Ins. s. 146.

The acts of the agent must be within the scope of the agency. May Ins. s. 143; *Richardson* v. *Maine Ins. Co.*, 46 Me. 394; *Ayres* v. *Hartford F. Ins. Co.* 17 Iowa, 176; *American Ins. Co.* v. *Gilbert*, 27 Mich. 429; *Lowell* v. *Middlesex Mut. F. Ins. Co.* 8 Cush. 127.

4. There was no proof that the plaintiff "told Butler"

that Carrigan was lessee of the store. It was a conceal-
ment. Wood Ins. s. 216. The representations in the appli-
cation are warranties, and a strict compliance is necessary.
Wood Ins. 271, s. 137; *Jennings* v. *Chenango Co. Mut. Ins. Co.*
2 Denio, 75; *Chaffee* v. *Ins. Co.* 18 N. Y. 378; May Ins. s. 156.

The burden of proving a literal compliance is on the
plaintiff. Wood Ins. 866, s. 507; *Campbell* v. *N. E. Mut.
Fire Ins. Co.* 98 Mass. 389, 390; Wood Ins. 380, ss. 196, 214,
223; *Carpenter* v. *Am. Ins. Co.* 1 Story (U. S.) 57; *Burritt* v.
*Saratoga Mut. Fire Ins. Co.* 5 Hill, 192; *Wilbur* v. *Bowditch
Fire Ins. Co.* 10 Cush. 446.

" The law of insurance has been regarded as specially
requiring the utmost good faith." REDFIELD, Ch. J., in
*Farmers' M. F. Ins. Co.* v. *Marshall,* 29 Vt. 28.

5. The defendant's 6th and 7th requests should have been
complied with. The very act itself of *assuming* the peril
of speaking without knowledge is, and ought to be held,
fraudulent. *Keyes* v. *Carpenter,* 3 Vt. 209; *Twitchell* v.
*Bridge,* 42 Vt. 72; *Cabot* v. *Christie,* Ib. 121; Wood Ins. ss.
195, 214.

*Redington & Butler,* for the plaintiff.

The defendant is bound by the acts of Butler. It is cer-
tainly bound by the acts of its own agent. R. L. s. 3617.

And an application taken or *transmitted* through a local
agent *is the act of the company;* and such agent is the agent
of the insurer, and not of the insured. R. L. s. 3620; 20
Reporter, 465; Wood Ins. 686, 690; *Bodine* v. *Ins. Co.* 51 N.
Y. 117; *Ins. Co.* v. *Fahren,* 68 Ill. 463; *Bank* v. *Ins. Co.* 31
Conn. 517; *New* v. *Ins. Co.* 17 Minn. 123.

Conversations with broker admissible upon the question
of agency. *Ly. F. Ins. Co.* v. *Ward,* 90 Ill. 545; 93 Ill. 96.

Question is, what was agent's *apparent* authority. *Mc-
Cabe D. Co.* v. *Mut. Ins. Co.* 14 Hun, 599.

A solicitor employed by a local agent is agent of the com-
pany. *Davis* v. *L. Ins. Co.* 18 Hun, 230.

Agent may act within the general scope of his real or apparent authority.   Wood Ins. s. 383.

In all cases the binding force of an act done or omitted by an agent is to be measured by his apparent authority, and is to be determined by the jury.   Wood Ins. 681, s. 403.

Butler's acts ratified.   *Beal* v. *P. F. I. Co.* 16 Wis. 241; *Ins. Co.* v. *McDowell,* 50 Ill. 120; *Greely* v. *Am. Cent. Ins. Co.* 60 Mo. 116.

Butler had knowledge of the title and occupancy of the property.   He was informed by the plaintiff of Carrigan's relation to the business.   Hence the company is estopped. *King* v. *Ins. Co.* 51 Vt. 569; May Ins. s. 140; *Ins. Co.* v. *Williams,* 13 Ins. L. Jour. 133; *Ins. Co.* v. *Wilkinson,* 13 Wall. 222; *Williams* v. *Ins. Co.* 14 Ins. L. Jour. 708; *Bank* v. *Ins. Co.* 49 Vt. 442; Wood Ins. 629.

I might go one step further and assert that knowledge alone of the agent as to the title, occupancy, use, etc., etc., was sufficient to bind the company in the case at bar.   *Roth* v. *City Ins. Co.* 6 McLean, 324; *Michael* v. *Mu. Ins. Co.* 10 La. An. 737; *King* v. *Ætna Ins. Co.* 42 Iowa 46; *Gates* v. *Penn. F. Ins. Co.* 10 Hun, 489; *Wood Ins.* s. 400; *Marshall* v. *Col. M. Ins. Co.* 27 N. H. 157; *Walsh* v. *Vt. Mu. F. Ins. Co.* 54 Vt. 351.

Proof of loss.   The verdict is conclusive that there was no fraud in the proof of loss.   " The law is well settled that the swearing must not only be false, but it must be knowingly and wilfully done."   16 Reporter, 593; 35 Mo. 148; *Mosley* v. *Ins. Co.* 55 Vt.152; Wood Ins. 736, 746; Sans. Ins. Dig. ss. 2, 3, 5.   The company must show that it was injured by the wilfully false statement.   *Stoche* v. *Ins. Co.* 49 Wis. 89; *Shaw* v. *Ins. Co.,* 1 Fed. Rep. 761; *Cabot* v. *Christie,* 42 Vt. 121; Wood Ins. 736, 740.

The elements of an *estoppel in pais* are wholly lacking here; the proofs of loss do not create the liability to pay the loss, but simply set running the time at the end of which

the amount contracted for shall become payable and at which action may be brought to enforce the liability.

FOLGER, Ch. J., in *McMaster* v. *Ins. Co.* 55 N. Y. 222.

It must appear insured *knew* the matters stated to be untrue. 14 Wall. 375; 35 Mo. 148; 4 Daly (N. Y.) 96; 6 Ind. 137; 61 Me. 67; 16 B. Mon. (Ky.) 411; 4 Fields L. Briefs, 311; *Clark* v. *Ins. Co.* 36 Cal. 168. The plaintiff is not liable for the fraud of his wife. 35 Miss. 391; 39 Md. 485; 23 Ind. 599. A principal is not liable for damage caused by a wilful tort of his agent. 1 East, 106; 13 Ill. 277; 1 Hill, 480; 2 N. Y. 479.

The opinion of the court was delivered by

POWERS, J. The first question presented by the exceptions is whether J. D. Butler in the matter of taking the application for the insurance in question, was so far acting for the defendant company as to make his knowledge of errors in such application knowledge in the company, and thus estop the company from claiming a forfeiture therefor.

It appears that Manley was a duly authorized agent of the company at West Rutland;—that Butler was in his office, and engaged to some extent in drumming for insurance, and that he and Manley divided the fees payable upon accepted applications in a proportion agreed upon between them. Butler, however, was not himself appointed or recognized by Manley or the company, as an agent. When the application of the plaintiff was returned by the company for further information respecting the occupancy of the store and the ownership of the goods therein, Manley "handed it to Mr. Butler and requested him to go and get the reply, and that Mr. Butler took the same and shortly after brought it back with the additional answers in Mr. Butler's handwriting." This is the defendant's evidence on this point, and upon it we are clear that the act of obtaining the reply to the company's questions was in legal significance the act of Manley, rather than Butler. Butler was expressly directed by Manley to do this service, and in do-

ing it he acted merely as the hand of Manley, and as the latter was confessedly the defendant's agent, this act was one done by its agent and in obedience to the company's direction. It is thus wholly unnecessary to consider the able argument of the defendant's counsel upon the question of Manley's power to create a sub-agent, or whether Butler had any of the functions of agency in the transaction. The business was done by Manley and he ran the risk of any perils that might affect the company incident to it. It would be a dangerous doctrine to promulgate, if we held that the company could avoid its responsibilities by repudiating the acts of its own agents if they happened in large towns to be done in part by the assistance of persons employed by such agents. There was no error on this point of exceptions.

As to the tenancy of Carrigan: in strict legal parlance, Carrigan was the owner of the goods in the store and tenant of the same. Mullin Bros. were the actual, visible tenants of the store and in visible possession of the stock. They were to become the sole owners when they paid Carrigan's debt. Butler knew all about the facts, and it is wholly unimportant when he acquired his knowledge,—if he knew, when under directions of the company through its agent, Manley, he undertook to reply to the company's questions and made a wrong statement. It carries all the consequences that create an estoppel on the company.

The false representations as to the settlement by the Lycoming Company, if made, are wholly immaterial. The fraud, misrepresentation, and false swearing, referred to in the by-laws, relate to the proofs of loss therein required to be made by the insured. The context leaves this beyond doubt. The plaintiff said nothing in his proofs of loss about the Lycoming loss. It was outside chaffer between him and Fletcher, and has no legal relation to his own loss. It is argued that this representation was made to induce the defendant company to settle his loss; but the company did

not settle his loss; it did not rely on such representation nor apparently regard it in its own action. What has it suffered therefore from it, or how could it suffer by means of it?

The plaintiff's wife made out the proofs of loss concerning the household goods, etc.

It is easy to see that respecting an inventory of household effects destroyed by fire the wife would, in most cases, be much better informed as to articles lost than her husband. What man of us, under such circumstances, could inventory the linen, bedding, crockery, and a thousand and one articles in his house, if they were burned, without the aid of his wife? But if the plaintiff was compelled to get the aid of his wife he assumes all responsibility for her errors as he would for his own.

The defendant's evidence tended to show that the wife included many articles not lost; some greatly overvalued, which had been purchased by the plaintiff himself, and some that he never owned at all. The plaintiff took his wife's inventory without scrutiny, swore to it, not knowing whether it was correct or otherwise; and it turned out to be grossly incorrect and false. Upon this evidence the defendant requested the court to charge that if the plaintiff adopted any false statement of the wife respecting a loss, or the value of goods lost, without investigating the facts, he thereby became guilty of a fraud himself; and if he made representations assuming to know the facts, when he had no knowledge, and such statements turned out to be false, it was a fraud within the meaning of the policy. The court did not answer these requests, but put these matters to the jury upon the theory of honest intention. In this was error. The company was entitled to a truthful inventory of the property lost. The plaintiff's duty under the policy was to supply it; his representations must be true in fact. He cannot even be honest by turning the matter over to his wife, and omit to inspect her inventory

to see if it be correct. If he had looked it over, and wished to be honest, he would have discovered many false statements which were calculated, and probably were intended. to work a fraud upon the defendant. He could have arrested this intended fraud, if he had done his duty. On the contrary, he recklessly indorsed it without examination, and by so doing made it his own fraud within the meaning of the policy.

If this view of the evidence had been laid before the jury, as requested by the defendant, who had the right to a charge upon it, possibly the jury might have rendered a verdict less surprising than the one they did.

Judgment reversed, and new trial granted.