JACOB MICK, RESPONDENT, v. THE CORPORATION OF
ROYAL EXCHANGE ASSURANCE OF LONDON, ENG-
LAND, APPELLANT.

JACOB MICK, RESPONDENT, v. FIRE ASSOCIATION OF
PHILADELPHIA, APPELLANT.

JACOB MICK, RESPONDENT, v. SPRINGFIELD FIRE AND
MARINE INSURANCE COMPANY OF SPRINGFIELD,
MASS., APPELLANT.

JACOB MICK, RESPONDENT, v. THE HOME INSURANCE
COMPANY, APPELLANT.

JACOB MICK, RESPONDENT, v. THE GIRARD FIRE AND
MARINE INSURANCE COMPANY OF PHILADELPHIA,
APPELLANT.

JACOB MICK, RESPONDENT, v. THE PENNSYLVANIA FIRE
INSURANCE COMPANY, APPELLANT.

JACOB MICK, RESPONDENT, v. PEOPLES NATIONAL FIRE
INSURANCE COMPANY OF PHILADELPHIA, APPEL-
LANT.

Argued June 25, 1913—Decided June 15, 1914.

1. Where a policy of fire insurance is written in a standard form
approved by governmental authority, the maxim *Verba chartarum
fortius accipiuntur contra proferentem* has no special applica-
bility.
2. A principal is liable for the fraud of his agent acting within the
scope of his authority, whether or not the principal would benefit
by the success of the fraud.
3. Where an insurance policy provided that it should become void in
case of any fraud or false swearing by the insured touching any
matter relating to the insurance or the subject thereof, whether
before or after a loss, and the insured delegated to agents the duty
of doing everything required to make complete proof of loss,
without question or supervision—*Held*, that the act of such agents

in presenting false and fraudulent vouchers to the company pursuant to demand, was imputable to the insured and that the policy was vitiated.

On appeal from the Supreme Court.

For the appellants, *French & Richards*.

For the respondent, *Wilson & Carr*.

The opinion of the court was delivered by

PARKER, J.    The question to be determined is whether the forfeiture clause in a standardized fire insurance policy, making it void "in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss," is under any circumstances available to the company after a loss when there is fraud in the claim committed by an agent of the insured without specific knowledge thereof or assent thereto by the insured himself, and if so, whether the circumstances of this case are such as to make the forfeiture applicable.

Stripped of disputed questions of fact which the jury resolved at the trial in favor of the plaintiff, the case presents these facts which were conceded or fully proved without substantial contradiction: In 1911, Jacob Mick, of whom the plaintiff is trustee in bankruptcy, was the owner of a blacksmithing and wagon repairing shop, which he conducted himself, and which required practically all of his own time. He also owned the property that was the subject of the fire loss, consisting of a hardware store and a small lumber yard adjoining thereto, which were conducted by his son Wilbert H. Mick. a young man of nineteen or twenty. Wilbert was not a partner, but an employe; still he had entire control of the store and lumber yard, even to signing checks on the bank accounts in connection therewith. He consulted his father with respect to increases of stock, and so on, but he ran the business, and his father ran the blacksmith shop, occasionally walking through the store and lumber yard, but not interfering beyond asking some general questions and looking

generally over the stock at inventory time. An inventory of the store and yard was made up in May or June, 1911, the work being done entirely by Wilbert, with the assistance of a clerk. Shortly after this, in June, the insurance was greatly increased. A fire, on June 28th, destroyed the lumber yard and store with most of the stock. Jacob Mick then employed a professional adjuster named Dawson, to whom, in conjunction with the son Wilbert, was entrusted the entire responsibility of dealing with the companies in collecting the insurance. The proofs of loss bear Dawson's imprint, and were doubtless prepared by him; they were sworn to by plaintiff before a local notary.

The crucial situation in the case was created by what follows. On September 11th the companies, in the exercise of rights reserved in the policies, sent to the plaintiff letters identical in tenor, of one of which the following is a copy:

"SEPTEMBER 11th, 1911.

"Mr. Jacob Mick, Laurel Springs, N. J.:

"DEAR SIR—This company is in receipt of a document purporting to be a proof of loss under Policy No. 2943468, issued by the Laurel Springs, N. J., Agency for damage by fire of June 28th, 1911. You are hereby notified that said document is not accepted as a satisfactory proof of loss as required by said policy.

"You are hereby required to file with this company a statement of your purchases (lumber and merchandise) and sales between October 1st, 1910, and June 28th, 1911, together with duplicate bills showing such purchases and sworn statement of your entire sales between these dates; also statements from the banks in which you did business of the money deposited therein during the same period and copy of inventory of June 1st, 1911, referred to in said document.

"Yours very truly,
"ROYAL EXCHANGE ASSURANCE,
"By   W. E. MILLER,
"Adjuster."

To which, under date of November 6th, 1911, Dawson replied as follows:

"Nov. 6, 1911.

"*Mr. Wm. E. Miller, 434 Walnut St., Phila.,*
  "*Representing:*  *  *  *  *Royal Exchange Assurance Co.*
    *  *  *

"DEAR SIR—Replying to your letter of Sept. 11, 1911, addressed to Mr. Jacob Mick, of Laurel Springs, N. J., I would state that he is unable to comply with your request of an exact copy of his purchases and sales from Oct. 1, 1910, to June 28, 1911, from the fact that he has no books of account to show same.    However, I send you herewith duplicate copies of bills of purchases so far as he has been able to obtain, also statement from banks of deposits and copy of inventory of June 1, 1911, which you also requested.

"Hoping this information will prove satisfactory, I am,
        "Very truly yours,
                "LOUIS DAWSON,
                "*Adjuster for Jacob Mick.*"

It appeared conclusively on the trial, that among these enclosed bills or invoices were several, amounting in all to nearly $6,000, which, to the extent of over $5,000, were false and fraudulent, in that they specified alleged purchases which had never been made by plaintiff and were purely fictitious.    It was a fair, if not a necessary, inference that Wilbert Mick, or Dawson, or both, had intentionally procured and put in these false bills to augment the amount of recovery.    Jacob Mick denied all knowledge of them, and took refuge behind the general agency of his son, who was not present at the trial, and whose whereabouts did not appear.    Jacob testified that he received this demand from the insurance companies, but did not give any bills to Dawson and did not know where Dawson got them; that he took the registered letter and passed it over to the adjuster to comply with the request contained therein and thought his son got the bills and gave them to Dawson; that he did the same with the other letters of like

purport; that Dawson was employed to do everything that was necessary to adjust the loss. Again, he testified that he gave the insurance company letter to the "boy" to pass over to Dawson, and that this was done; that the son had practically unlimited power, as far as plaintiff was concerned, to conduct the lumber and hardware business.

With these facts in mind, we turn to the policy itself. It is apparently of the standard form, approved by the commissioner of banking and insurance of this state, pursuant to legislative authority (*Comp. Stat., p.* 2862, § 77; *Pamph. L.* 1902, *pp.* 407, 436, 437), and, consequently, there is no special applicability of the maxim *Verba chartarum fortius accipiuntur contra proferentem. Nelson* v. *Traders Insurance Co.,* 181 *N. Y.* 472. The provisions pertinent to the case in hand are these:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

\*      \*      \*      \*      \*      \*      \*      \*

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss."

It was argued at the trial, first, that the requirement for the production of books, papers, &c., constituted a condition precedent to recovery, and that failing its *bona fide* performance in full, plaintiff could not recover.

This breach, however, was not specified in the pleadings as required by the statute (Practice act of 1903, section 118), and hence it was not error to overrule the particular defence. It is suggested that the pleas should be now amended to let in this defence; but on the trial, counsel after deliberation concluded not to apply for leave to amend, and appellate courts do not ordinarily, if ever, permit amendments of the record for the purpose of reversal. Secondly, it was argued that under the clause secondly quoted the fraud of the agent was imputable to the principal, and hence, that as a result of the presentation by Wilbert Mick and Dawson as plaintiff's agents, of false and fraudulent invoices, the policy became forfeited. This was likewise overruled, and the court instructed the jury that—

"In order to hold Mick answerable to the extent of defeating his claim by reason of the introduction of false vouchers, Mick himself must in some wise have been a party to it. In other words, he must have been guilty of fraud. If they came into the case and were sent to the insurance company from a totally irresponsible source, why, of course, he would not be responsible for it. If they came in as a result of fraud on the part of his agent, my view is he would not then be responsible for it, and that that would not defeat recovery. Now, gentlemen, do not misunderstand me, that applies to the question of the vouchers that were put in. When it comes to the question of the valuation which Mick swore to, if you were to find that he did overstate his valuations, and overstated them in a way indicating to you false swearing, then, of course, that would defeat his recovery as well.

"I take it that the important question for you to determine is Mick's relation to these bills on the question of the effect of the bills as defeating his claim. If he was a party in anywise to them, he cannot recover here, nor can his trustee in bankruptcy recover here. If he was innocent of any wrong-doing in that respect, then I say to you that the presence of those bills does not defeat his recovery."

Defendant submitted, among others, these requests to charge, which were refused:

"18. If, from the evidence, you find that Jacob Mick delegated to anyone as his agent the duty of complying with the company's demand for copies of bills, and such agent, with or without the knowledge of Jacob Mick, designed, invented or procured and filed fraudulent bills for goods never purchased or owned by Jacob Mick, such action would be connected with the service and within the scope of the employment, and the verdict should be for the defendant."

"19. If you find from the evidence that his son was the general agent of Jacob Mick for the purpose of carrying on his business, and was well acquainted with such business, and that the duties of such agent included that of complying with the company's demand for bills of purchases, and that said agent in pretended compliance with such demand furnished to or caused to be filed with the defendant company bills for goods never purchased or owned by Jacob Mick, the verdict should be for the defendant."

The responsibility of an innocent principal for the fraud of an agent has been one of the vexed questions of the law. That an innocent principal cannot, as a general proposition, be permitted to benefit by the fraud of his agent, has been settled in this court. *Marsh* v. *Buchan,* 46 *N. J. Eq.* 595; *Reitman* v. *Fiorillo,* 76 *N. J. L.* 815. It seems to be settled that a principal is not liable in tort for deceit, upon fraudulent representations made by his agent without his knowledge or consent (*Kennedy* v. *McKay,* 43 *Id.* 288; *Decker* v. *Fredericks,* 47 *Id.* 469; *White* v. *New York, Susquehanna and Western Railroad Co.,* 68 *Id.* 123); the remedy in such case resting on a rescission of the contract. But this seems to relate mainly to the form of the remedy. In many cases the controlling factor was the extent of the agent's authority; and such authority was held to have been exceeded in such cases as *National Iron Armor Co.* v. *Bruner,* 19 *N. J. Eq.* 331; *Kennedy* v. *Parke,* 17 *Id.* 415, and it was held nonexistent in *Belcher* v. *Manchester Building and Loan Association,* 74 *N. J. L.* 833; *Pyle* v. *Manchester Building and Loan Association, Id.* 840; while in others, the scope of the authority was held to cover the fraudulent acts and the principal

had to suffer.  *Putnum* v. *Clark,* 29 *N. J. Eq.* 412; affirmed on another ground in 33 *Id.* 338; *Campbell* v. *Nichols,* 33 *N. J. L.* 81; *Chetwood* v. *Berrian,* 39 *N. J. Eq.* 203.  Naturally, when an agent entrusted with powers to deal with a particular subject-matter misuses those powers so as to deal unlawfully, and the principal is sought to be held responsible, the plea is that the powers are exceeded and the unlawful acts are not within the scope of the agency.  But, as was said by Mr. Justice Willes, in the leading case of *Barwick* v. *English Joint Stock Bank, L. R.,* 2 *Exch.* 259; 36 *L. J. Exch.* 147; 12 *E. R. C.* 298:

"In all these cases it may be said, as it was said here, that the master had not authorized the particular act, but he has placed the agent in his place to do that class of acts, and he must be answerable for the manner in which that agent has conducted himself in doing the business which it was the act of his master to place him in."

That case was quite generally considered to limit the responsibility of the principal for fraudulent acts of the agent to those committed for the benefit of the principal; but this misapprehension is set right by the House of Lords in the recent case of *Lloyd* v. *Grace, Smith & Co.* (1912), *A. C.* 716, where a solicitor was held accountable for the fraudulent procurement of a transfer of property from a client by the solicitor's managing clerk, though the solicitor in no way benefited or could benefit thereby, knowing nothing of the transaction.  The rule is laid down that irrespective of the question of benefit, the principal is liable for the fraud of the agent acting within the scope of his authority.  These, and other English cases, are cited with approval, and the general question discussed by Mr. Justice Kalisch, speaking for this court, in *Corona Kid Co.* v. *Lichtman,* 86 *Atl. Rep.* 371; 84 *N. J. L.* 363.  In this state we have decided, it is true, that in such case an action of deceit will not lie against the innocent principal; but those decisions go to the form of the remedy and not to the denial of relief.  That fraud of an agent within the scope of his employment will invalidate a contract so procured by him for his principal, may be considered settled and

is not disputed here. Thus, if Wilbert Mick, under general authority to procure insurance on the lumber yard, had obtained the policies by fraudulent misstatements, the companies, of course, could not be held on them.

But it is said that this rule does not extend to cases where the contract was *bona fide* entered into, and a forfeiture is claimed by reason of some subsequent act of the agent, fraudulent in its character, though this, if done by the principal himself, would render the policy void because of the operation of the forfeiture clause; and a number of cases are cited in support of this doctrine. An examination of this array of authorities will demonstrate that they are very far from possessing the weight that is claimed for them.

The decision principally relied on is *Metzger* v. *Manchester Fire Assurance Co.,* 102 *Mich.* 334; 63 *N. W. Rep.* 650, in which the property belonged to a wife, and the husband had the general management of the business, kept the books, and in proving loss, swore to the books as true, while in fact they were largely fictitious. The court held, it is true, that the plaintiff, if innocent, should not be prejudiced under the forfeiture clause because of the husband's fraud, and that that clause, guarding against fraud or false swearing by the insured, should not be extended by construction to include fraud or false swearing by her agent. But the value of the decision as authority is somewhat impaired, first, by the fact that although this doctrine should have led to an affirmance of the judgment for the plaintiff, that judgment was re-versed on another ground, and the deliverance by the court is saved from being purely *obiter* only by its effect in saving to the plaintiff a second trial; and secondly, by a vigorous dissenting opinion, reading in part thus:

"Did the facts in this case make the plaintiff a party to the deceit? This, of course, depends upon the determination of the question whether the acts of her agent were in fact her acts. It will be conceded that if she made false and fraudulent representations, the policy would have been rendered void. I cannot assent to the rule that where one trusts the entire management of his business to an agent, the principal is not

responsible for the fraudulent acts and representations of the agent in connection with the business. It is manifest from this record that the plaintiff knew nothing about the business. It was carried on in her name. Grant that it was carried on for her benefit, still she constituted her husband her sole agent to buy and sell, attend to the insurance, and exercise exclusive control and management of the entire business. When the adjusters came to adjust the loss, he appeared as her sole representative. The defendant desired that he should obtain from the plaintiff a written authority to act for her. She voluntarily executed a power of attorney, giving him full authority in the premises. She should be held responsible for his acts and conduct. Seldom do records of insurance litigation exhibit a more deliberate and glaring attempt to defraud an insurance company. Such attempts should not be made successful, under the guise of agency, especially where there exists the intimate relation of husband and wife; the one claiming to be an innocent principal, and the other a confessedly dishonest agent. The judgment should be reversed and no new trial ordered."

The next case relied on is *Boston Marine Insurance Co.* v. *Scales,* 101 *Tenn.* 628; 49 *S. W. Rep.* 743. While the doctrine of the Metzger case is adopted generally in the opinion, the court seems to rest its affirmance of a judgment for plaintiff on the failure of appellant to point out the evidence of fraud relied on and its own failure to find it in the printed book.

In *Evans* v. *Crawford County Insurance Co.,* 130 *Wis.* 189; 109 *N. W. Rep.* 952, the husband, who was owner and insured under the policy, was away at the time of the loss, and the wife, as his agent *ex necessitate,* made the proofs. The court was evidently unwilling to accept fully the doctrine in the Metzger case and said: "We go no further than the facts of this case in adopting that view. * * * In the instant case there was neither an express turning over to the wife as agent, of the mailing of proofs, nor a careless omission to verify them; but merely an agency *ex necessitate,* the husband being away."

In *Fields* v. *German American Insurance Co.,* 120 *S. W. Rep.* 697, the defendant company relied on false swearing by one of the partners in the trial of the very action and requested an instruction of a verdict for defendant if such partner had sworn falsely. A refusal so to instruct was upheld, and properly so; for this request evidently assumed the fact of agency because the partner was a witness. But there was no such partnership agency because the claim had been assigned to plaintiff before the suit was begun.

In *Virginia Fire and Marine Insurance Co.* v. *Hogue,* 105 *Va.* 355; 54 *S. E. Rep.* 8, the property was owned by a wife, and managed by the husband, who made proof of loss. The court relied largely on the proposition that a refusal to charge a request that the wife was responsible for a false statement by the husband, was justified on the ground that it failed to distinguish an untrue statement and a fraudulent one. The Metzger doctrine appears in the syllabus, but it is not at all plain in the text, and apparently not relied on for a decision of the case.

The case of *Mullin* v. *Vermont Mutual Fire Insurance Co.,* 58 *Vt.* 113; 4 *All. Rep.* 817, is to the contrary. The inventory of household goods was made up for the insured by his wife, and sworn to by the husband without examination into its truthfulness. It turned out to be grossly incorrect and false. The trial court was requested to charge that if plaintiff adopted any false statement of the wife respecting a loss, or the value of goods lost, without investigating the facts, he thereby became guilty of a fraud himself; and if he made representations, assuming to know the facts, when he had no knowledge, and such statements turned out to be false, it was a fraud within the meaning of the policy. A refusal of these requests was held error, leading to a reversal, the court saying:

"The company was entitled to a truthful inventory of the property lost. The plaintiff's duty, under the policy, was to supply it. His representations must be true in fact. He cannot even be honest by turning the matter over to his wife and

omit to inspect her inventory to see if it be correct. If he had looked it over and wished to be honest, he would have discovered many false statements which were calculated, and probably were intended to work a fraud upon the defendant. He could have arrested this intended fraud if he had done his duty. On the contrary, he recklessly endorsed it without examination, and by so doing made it his own fraud, within the meaning of the policy."

The case is one of first impression in this state, and we are therefore at liberty to declare the rule that seems best to accord with reason and justice. In our view the Vermont rule is the better one. We consider that it is unreasonable and illogical to say that the owner of insured property who is under the obligations by the terms of his policy to make sworn proofs of loss and to furnish on demand full details of his books, papers, invoices and vouchers, or copies thereof when lost or destroyed, may, when such demand is made, voluntarily turn over the entire responsibility of complying therewith to an agent, dismiss the matter from his mind, reap the benefit of what the agent does that makes in his favor and is in genuine compliance with the demand, and at the same time evade the penalty that is laid by the policy upon fraud and false swearing. He should not be heard to adopt the agent's acts where they make for him, and disclaim them where they are to his prejudice. It is he, and not the insurance company, who reposes the confidence in the agent; and when that confidence is abused, especially by acts of fraud that if successful will be greatly to his pecuniary advantage at the expense of the company, he that reposes the confidence should pay the penalty. We do not overlook the wording of the forfeiture clause, nor the rule relied on by plaintiff, that forfeitures are not favored, and will not be enforced unless they come within the strict words of the policy. That rule has been more than once enunciated by this court as well as by the Supreme Court. *Carson* v. *Insurance Company,* 43 *N. J. L.* 300; *Snyder* v. *Insurance Company,* 59 *Id.* 544; *Hampton* v. *Hartford Fire Insurance Co.,* 65 *Id.* 265. We do not deem our present de-

cision to be a departure from that rule. The question is whether in a case where forfeiture is invoked for the most meritorious cause on which it can be rested, viz., fraud, which the law abhors, and that fraud has been committed by an agent vested with the most complete and ample powers by a principal who is entirely passive and looks to the agent for the performance of every act relating to settlement of the loss, the fundamental maxim *qui facit per alium facit per se* shall be applied, or the court shall declare the clause futile for not having added to the phrase, "fraud or false swearing by the insured," the words "or his agent." Of the two alternatives, we consider that justice requires the adoption of the former, and that no violence is done thereby to the terms of the policy.

This is not a case of agency *ex necessitate*. It is not the case of an insured relying necessarily upon a subordinate or agent for the information required to make up a proof of loss, revising and supervising it as best he may. Where the insured, though exercising due care, is himself deceived by his own agent, and in good faith presents a statement which turns out to be untrue in respect to matters which could not reasonably have been discovered by the insured in the exercise of due care, there is no fraud, for he has been himself deceived. But where he undertakes to wash his hands of the entire matter, and without question or supervision of any kind delegates to an agent the contractual duty of making a true statement, he cannot be heard to say, where fraud is committed by the agent in the exercise of his general powers, the consequences of that fraud should not be visited on him.

We do not overlook the fact that an honest loss may be thus defeated by a dishonest agent. The answer is that he who employs and relies entirely on an agent to deal with others takes the risk of his dishonesty in such dealings. And it should not be forgotten that if these fraudulent bills had not been discovered, the companies would probably, if not certainly, have been mulcted in some $5,000 in excess of the real liability. It will not do to say that plaintiff should recover

the real loss and lose the false claim; for this would throw wide open a door to wholesale fraud and deprive the provisions under consideration of much of their practical value. The forfeiture provision should be regarded as based on the maxim *falsus in uno, falsus in omnibus;* and amounts to a declaration that where there is any fraud or false swearing, the whole claim is tainted thereby. The justice of so regarding it in cases where the insured personally commits the fraud is manifest; and a fair interpretation of the clause in the light of its recognition by the state as a matter of public policy, requires its application also to cases where the responsible party undertakes to shift the entire responsibility on an agent as his *alter ego.*

We hold, therefore, that there was error in refusing the eighteenth and nineteenth requests to charge, although in view of the outside authorities cited, and of the absence of controlling decisions in this state on the precise point, the trial judge acted judiciously in ruling as he did. Our consideration of the case, after full argument, leading us to a different result, the judgment below will be reversed, to the end that a *venire de novo* be awarded.

GARRISON, J. (dissenting). My vote for the affirmance of these judgments is based upon two fundamental propositions of law, the soundness of neither of which has ever been questioned. The first of these is that a verdict upon a material issue made by the pleadings and submitted to the jury establishes the fact in the appellate court; and the other is that language in a contract imposing a forfeiture will be construed in a manner as favorable to the party whose property is to be forfeited as is consistent with fair principles of interpretation. Citation of authority for these common law maxims is surely unnecessary.

Applying the first of these propositions to the question whether the respondent was guilty of fraud in the production of the vouchers or had conspired or attempted to conspire with anyone for their fraudulent production, we find that these material facts were directly placed in issue by two

of the defendant's pleas and that such issues were submitted to the jury whose verdict was that the respondent was not guilty of fraud in either respect.

Assuming that this verdict is binding upon this court it follows that if false vouchers were produced without the respondent's fraud, the most he can be charged with is negligence (which is not made a ground of forfeiture in the policy), unless such forfeiture clause properly construed penalizes him for the fraud of another. This brings us to the established canon for the construction of forfeiture clauses in contracts. Such clause in the contract before us is in these words:

"This entire policy shall be void in case of fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof whether before or after the loss." The natural construction of the words "fraud or false swearing by the insured" under the maxim *nosciture a sociis* is that as false swearing must be the act of the insured, so the fraud referred to must also be his act, *i. e.*, a fraud perpetrated by him or with his consent or to his knowledge. *Carson* v. *Jersey City Insurance Co.*, 43 *N. J. L.* 300.

This, if it be not the necessary construction, is at least a permissible construction, which is all that is required by the canon stated, viz., that the language of a forfeiture is to be construed as favorably to the party whose property is to be forfeited as is consistent with the fair principles of interpretation, and surely no one will contend that the interpretation of associated words according to the maxim *noscitur a sociis* is not a fair principle of interpretation. The notion that this established canon of construction does not apply to a contract of insurance because the policy is in standard form, has no foundation in law or reason.

As was said by this court in *Hampton* v. *Hartford Fire Insurance Co.*, 65 *N. J. L.* 265, 267: "The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms or words used to express it."

Yet it is only by ignoring such established canon that the forfeiture of this policy can be visited upon the insured, for the verdict of the jury effectively negatived the only fraud that under the proper interpretation of the contract would work a forfeiture. The failure to observe and apply this familiar canon results therefore, in the present case, in a forfeiture by the insured of over twenty-five thousand dollars of actual fire losses, for no other fault than his possible negligence in entrusting to a professional insurance adjuster the duty of collecting and transmitting to the insurance companies the mass of bills called for by their notice to him, a fault, if such it be, by which not a penny's worth of harm came to the insurer and not a penny's worth of benefit inured to the insured.

The fact that this harsh result can be reached only by ignoring the firmly established canon evolved by the law for the express purpose of preventing just such unconscionable consequences is the plenary ground of my inability to concur in the reversal of these judgments.

I am requested by Mr. Justice Kalisch and by Judge White to say that they concur in the foregoing views and vote to affirm.

*For affirmance*—GARRISON, KALISCH, WHITE, JJ.   3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE. PARKER, VREDENBURGH, HEPPENHEIMER, JJ.   6.