## SUPERIOR COURT.

### ROBERT L. TILTON agt. THE HAMILTON FIRE INSURANCE COMPANY.

An insurance company, insuring against fire, is responsible for the loss of *goods stolen* during the fire.

*General Term,* June, 1857.

DUER, *Ch. J.,* BOSWORTH, HOFFMAN, SLOSSON *and* WOODRUFF, *Justices.*

THIS action was brought upon a policy of insurance made by the defendants, to recover from them their proportion of the loss and damage sustained by the plaintiff by the destruction or damage of the property insured, by a fire which occurred on the morning of the 5th of February, 1855.

By the pleadings in the action, the making of the policy and the occurrence of the fire were admitted ; and also that the goods of the plaintiff saved from the fire were damaged to the extent of nine hundred dollars. In addition to this, the plaintiff

claimed that there was a total loss of goods to the amount of $3,459.35, covered by the policy.

The defendants denied the total loss of any goods, and claimed that the plaintiff, on presenting his claim to the defendants, had made false statements as to the amount of his loss, whereby, under the terms of the policy, he had forfeited his claim to the amount of damage admitted to have been suffered.

The action came on to be tried before DUER, J., and a jury, on the 21st April, 1856.

Upon the trial the plaintiff read in evidence the policy of insurance, bearing date June 1st, 1854, whereby the defendants insured the plaintiff against loss or damage by fire, to the amount of $1,500, on his stock of ready-made clothing, contained in the building No. 140 Fulton-street, New-York; also, $400 additional on the store fixtures, furniture, &c., for the term of one year thereafter.

The plaintiff then offered evidence tending to show that on Saturday, the 3d day of February, 1855, the store was closed at the usual hour in the evening, and that neither the plaintiff nor any of his clerks again entered it. That on Monday morning, the 5th of February, 1855, when the plaintiff and his clerks came to the store, they found the building entirely destroyed. That neither the plaintiff nor any of his clerks were present at the fire. That in the morning after the fire, the plaintiff was notified by the agents of the defendants, that they had removed his goods from the store, and that they were stored in the basement of the Sun Building; and soon afterwards, the plaintiff having hired the store No. 194 Fulton-street, the defendants delivered to him the goods saved, which were taken from the basement of the Sun Building to the store No. 194 Fulton-street, where an inventory was taken of the same. That by this inventory it appeared that the value of the goods saved amounted to $9,488.66.

Evidence was also offered by the plaintiff, tending to show that on the night previous to the fire, when the store was closed, there was a stock of goods on hand of the value of $12,948.01.

Tilton agt. The Hamilton Fire Insurance Co.

That many goods, which were in the store on the evening previous to the fire, were not among the goods delivered to the plaintiff after the fire. That the fixtures, &c., covered by the policy to the value of $400, were, together with the building, totally destroyed by the fire in question.

The defendants gave evidence tending to show that in making up the account of the goods saved from the fire, the plaintiff had fraudulently undervalued the goods, so as to increase the apparent amount of his total loss. The plaintiff offered counter evidence on this point, tending to show that the accounts were, in all respects, just and true.

The defendants then offered evidence tending to show that the fire in question was discovered about midnight, in the third story of the building No. 140 Fulton-street; that a few minutes thereafter the insurance watch arrived, broke open the doors, took possession of the store, and commenced moving the goods across the street; that the police formed lines across the street, about midway of the block above and below the fire, to prevent persons approaching the fire; that all the goods were removed from the store before the fire reached that portion of the building occupied by the plaintiff, and were taken across the street, and piled up on the sidewalk, extending from the curbstone back against the door of a hotel then open; that the goods were covered by oilcloths, and policemen were stationed in charge to watch them; that after all the goods had been removed across the street, they were taken to the Sun Building, a hundred feet distant, and stored in the basement, which was locked up, and the key retained by one of the insurance agents until delivered to the plaintiff the next morning; that all the goods stored in the Sun Building were delivered to the plaintiff the next morning.

The plaintiff gave evidence tending to show that a large number of persons were admitted inside the lines formed by the police; that persons passed them freely; that there were several hundred persons assisting in removing the goods, including policemen, insurance watch and others; that there was a great

deal of confusion; and that goods might have been stolen and carried away without being noticed.

The court thereupon charged the jury, amongst other matters as follows:—

That, if the witnesses on the part of the plaintiff are to be believed, the plaintiff had in his store, on the night of the fire, goods to the value of $12,948.01, while the goods saved by the defendants, and delivered to the plaintiff at the Sun Buildings, on the morning after the fire, only amounted to $9,488.66, leaving a deficiency of $3,459.35, which the plaintiff claims were lost or destroyed by the fire. In opposition to this, we have the testimony on the part of the defendants, that all the plaintiff's goods were removed by them from the store before the fire reached that portion of the building. None of the witnesses, however, can testify that all the goods removed from the store were taken to the Sun Building, and these statements can only be reconciled upon the supposition that a portion of the goods were abstracted during the fire. Although it is a serious question, and in my judgment a very doubtful one, whether the insurers, insuring against fire alone, are bound to make good any loss resulting from stealing the goods by persons at the fire, yet, for the purposes of this trial, I shall charge you that it is immaterial whether the goods were actually burned, or were abstracted or stolen by persons at the fire. If you are satisfied that the plaintiff was not guilty of any fraud in making the statement as to the amount of his loss, he is entitled to your verdict for the sum of $400 insured upon the fixtures, and also for three twenty-eighths of that portion (if any) of the goods in the store on the night of the fire, which were either burned or abstracted by persons at the fire. If you find for the plaintiff for the full amount claimed, your verdict will be for $900.

The counsel for the defendants thereupon excepted to that portion of the charge in which his honor charged the jury that the defendants were liable for goods stolen at the fire.

The jury thereupon returned a verdict in favor of the plaintiff for nine hundred dollars, which was directed by the court

Tilton agt. The Hamilton Fire Insurance Co.

to be entered, subject to the opinion of the court upon the question as to the liability of the defendants for goods stolen; to be heard in the first instance at the general term, on a case to be made, with leave to either party to turn the same into a bill of exceptions.

The case was argued at the February general term, 1857, before Bosworth and Hoffman, Justices. Judge Bosworth wrote an opinion in favor of the plaintiff, that he have judgment on the verdict, to which Judge Hoffman dissented. A re-argument was, therefore, ordered before the full bench.

Stillwell & Swain and D. D. Field, *for plaintiff.*
Wakeman, Latting & Phelps, and E. W. Stoughton, *for defendants.*

By the court—Duer, Chief Justice. The judge, upon the trial, charged the jury that if they were satisfied that the plaintiff had sustained the loss that was claimed, he was entitled to recover, as well for the goods abstracted or stolen as for those, if any, destroyed by fire. To this part of the charge the counsel for the defendant excepted; and whether this exception is well taken is the single question that we are now required to determine. In words less technical, the question is, whether, as fire is the only risk mentioned in the policy, the defendants are answerable for the loss of goods that, during the course of, or subsequent to, their removal from the building on fire, and before any part of them had been restored to the possession of the assured, had been abstracted or stolen?

The determination of this question evidently depends upon the true interpretation and just application of the established maxim, that, in determining the character of a loss for which an indemnity is claimed under a contract of insurance, its *proximate* cause is alone to be regarded; so that, when it appears that this proximate cause was a peril not covered by the policy, the insurers are discharged from all liability. The well-known maxim of Lord Bacon, ("*In jure, causa proxima, non remota, spectatur,*") it is admitted, furnishes, in all cases the controlling

rule.  Strictly speaking, the proximate cause is that which im-
mediately precedes and directly occasions a loss; and hence,
if the maxim is to be understood in this limited sense, it is
plain that the defendants are not answerable for the loss that is
claimed, since its proximate cause, in this sense, was not fire,
but theft—a risk which the language of the policy does not
embrace, and against which no indemnity in terms is promised.

It is not pretended, however, that the maxim, in its applica-
tion to the contract of insurance, has ever been understood, or,
without an entire disregard of prior decisions, can now be un-
derstood, in this strict and limited sense—a sense that, if
adopted, would confine the liability of insurers to losses pro-
duced solely by the direct agency of a peril insured against,
upon the property insured.  It is not denied that, in numerous
cases, where the property has not been at all injured or affected
by the direct action of the peril, the insurers have been held
responsible for a subsequent loss, even when its immediate
cause has been an act or event not mentioned in the policy.
Nor is it denied that, in all such cases, the law attributes the
loss to the original peril, as its proximate cause.  Thus, to
select a frequent and familiar instance, where goods insured
only against fire, and contained in a building actually on fire,
are neither touched by the flames nor affected by the heat, but
are saturated by the water used to extinguish the fire, and are
thereby damaged or rendered worthless, it has never been
doubted that the insurers are bound by their contract to satisfy
the loss; nor that it is recoverable as a loss occasioned by fire,
although the voluntary application of water was, in reality, its
sole immediate cause.  And this single example is sufficient to
prove that the maxim, " *causa proxima non remota spectatur*,"
is not to be strictly and literally construed, but, by its received
interpretation, embraces consequential or incidental losses, as
well as those which are direct and immediate.  To enable us,
therefore, to answer the novel question now before us, it will
be necessary to define the consequential losses that the maxim
by which we must be governed has been held to embrace, and
carefully to distinguish them from those, the recovery of which

it has been held to preclude. We must ascertain, if possible, the principle or grounds upon which each class of cases may justly be said to rest, that we may determine to which class that which is before us, by a parity of reasoning, ought to be referred; and this we shall now endeavor to do, by referring to a few of the cases belonging to each class.

There are some losses, not produced by any direct action of a peril insured against upon the property insured, and therefore strictly consequential, which it is admitted by all that the insurers are bound to make good. They are responsible for every loss which is, physically, a necessary consequence of the peril; that is, for every loss that, from the nature of the peril, and of the subject insured, when the peril occurs, must inevitably follow.

The modern case of *Montoza* agt. *The London Assurance Company* (6 *Exchq. Rep.* 451, *S. C.*, 4 *E. Law and Eq. R.* 800,) supplies an excellent illustration.

The insurance was on tobacco, forming part of a cargo consisting of hides and tobacco. The vessel, in stress of weather, shipped a quantity of sea-water, by which the hides, upon the top of which the packages of tobacco were stowed, were thoroughly wetted; but the tobacco was never in contact with the water, and sustained no damage directly from that cause. The hides, however, in consequence of the wet, became putrid, and emitted a fetid odor, which, pervading the tobacco and destroying its flavor, rendered it unmerchantable, and the court of exchequer held that the defendants were bound to satisfy the loss, as a loss from the perils of the sea. Here the effluvium arising from the hides—a risk not mentioned in the policy—was the immediate cause of the damage to the tobacco; but as this was a necessary consequence of the damaged condition of the hides, and therefore of the perils of the sea, the entire loss was justly attributed to those perils as its proximate cause.

But although insurers, by force of their contract, are liable for every loss which is a necessary result of a specified peril, it is certain that they are not liable for every loss that may justly be deemed a consepuence of such a peril; that is, for every

loss that, but *for the happening of the peril,* would not have oc-
curred.    And, on the other hand, it is equally certain that their
liability is not confined to consequential losses, that may prop-
erly be deemed necessary and inevitable.

In the case that I shall first cite, the claim of the assured for
a consequential loss was rejected, upon the ground that the loss,
although consequential, could not be justly attributed to the
peril which preceded as its proximate cause.

In the case of *Levie* agt. *Jansen,* in the king's bench, (12 *East
Rep.* 648,) the ship insured, which was " warranted free from
American condemnation," was driven ashore by the perils of
the sea, and while in that position was seized and condemned
by our government; but the vessel, although stranded, might
have been got off; so that, but for the seizure that followed, a
partial loss only would have been sustained.   The loss claimed
was a total loss from the perils of the sea.   The court, how-
ever, held, not only that the partial loss from sea damage was
merged in the substantive total loss that followed, but that this
total loss was imputable solely to the capture and condemna-
tion, and not to the stranding as a peril of the sea, and conse-
quently that the assured was not entitled to recover.   Lord
ELLENBOROUGH, in delivering his judgment, said, by way of
illustration, " If a ship meet with sea-damage which checks her
rate of sailing, so that she is taken by an enemy, from whom
she would otherwise have escaped—though but for the sea-
damage she would have arrived safe—the loss is to be ascribed
to the capture, and not to the sea-damage, upon the principle
that ' *causa proxima non remota spectatur.* ' "

In the case of *Price* agt. *Homer,* (12 *Mass. Rep.* 230,) this
decision was followed by the supreme court of Massachusetts,
and the loss of a vessel, which was captured after being dam-
aged by the perils of the sea, was imputed to the capture as its
proximate cause; and as, by the terms of the policy, the in-
surers were exempted from a loss by capture, it was held that
the assured were not entitled to recover.

In an early case in our own supreme court, (*Patrick* agt.
*Com. Insurance Co.,* 11 *Johns. Rep.* 14,) the insurance was on

the cargo of the ship Thomas Jefferson, and the policy con-
tained a clause exempting the insurers from " any risk in port
but sea-risk." The ship, with the cargo insured on board, was
in the bay of Cadiz, which was then besieged by the French,
and, in a violent storm, she broke from her moorings, and was
driven on shore; and, after remaining in that situation for some
days, some French soldiers came on board, and destroyed, by
fire, both vessel and cargo. The judge, upon the trial, sub-
mitted to the jury the question whether the loss was occasioned
by sea-risk, and the jury found a verdict for the plaintiff for a
total loss. The court, however, set aside this verdict as con-
trary to law and evidence, and in delivering their judgment,
KENT, Chief Justice, said that, " as the cargo was not injured
by the stranding, and no effort to remove it was made, and as
the means of removing it from the vessel across the bay of Ca-
diz to the city might easily have been procured, it was evident
that the loss of the cargo must be imputed wholly to the act of
the French. The stranding undoubtedly led to this unhappy
result, but that the court must place the loss to this result, and
not to the stranding, upon the maxim that ' *causa proxima non
remota spectatur.*' "

The insurance in the case of *Obillia* agt. *The Allegany Co.
Mutual Insurance Company*, (3 *Barr Rep. p.* 470,) in the supreme
court of Pennsylvania, was upon goods against fire, and the loss
claimed was for the damage which the goods had suffered in the
course of their removal from the building in which they were
stored. This building was not on fire, but was very near to
another which the flames had seized, and the removal of the
goods was judged to be necessary to their preservation. The
court held, that as the fire did not reach the building in which
the goods were contained, and the goods, but for their unneces-
sary removal, would not have been injured, the insurers were
not responsible for a loss which was occasioned merely by an
apprehension of the peril insured against, and not by the peril
itself.

My observation upon the cases that have been cited is, that
it cannot be denied that in each of them the loss for which an

Tilton agt. The Hamilton Fire Insurance Co.

indemnity was claimed, was, in one sense, a consequence of the peril insured against, since in each it was certain that but for the happening of the peril—the sea-peril in the first case, the fire in the last—no loss, or a loss only partial, would have occurred; but as in each case the property insured would have been saved, in whole or in part, but for the happening of a subsequent event or risk, this subsequent risk, as it was the only efficient, was properly held to be the proximate cause of the loss, and as it was not covered by the terms of the policy, the insurers were, necessarily, discharged from its payment. In each case, the peril insured against was merely the occasion, and not, in any legal sense, the cause of the loss.

From these, therefore, and many other cases in which the insurers have been exonerated from consequential losses, it may be safely deduced, as a general rule, that insurers, whether on a marine or fire policy, are never liable for consequential losses, other than such as are physically or legally necessary, unless it appears that not only the property insured was involved in a peril insured against, but that it must have perished from that cause had the peril continued to operate. In fewer words, unless it appears that the loss, had it not been consequential, would have been immediate and total.

When this necessary condition of the liability of the insurers is proved to have existed, the consequential losses for which they have been held to be answerable, may be divided into two classes; and if the loss now claimed can with propriety be referred to either of these classes, the plaintiff will be entitled to our judgment; otherwise, the verdict in his favor must be set aside, and a new trial be granted.

First: The insurer must satisfy every loss which is shown to have been, although not a *necessary*, a *natural* consequence of the peril insured against; and by *natural* is evidently meant a usual and probable consequence, and such, therefore, as it is reasonable to believe, was in the contemplation of the parties when the insurance was effected. Hence the insurers are bound to indemnify the assured against every loss that may be expected to follow from the means usually employed to avert or

diminish the peril, and save the property insured from the destruction in which it would otherwise be involved; and it can hardly be said that their liability for consequential losses, that may with certainty be referred to this class, has ever been doubted or denied.

The examples that most readily occur are, under a marine policy, jettison of goods, or the cutting away of a mast during a storm; and, under a fire, the damage to the goods from water, and the injuries which they suffer from haste and negligence in the course of their removal from a building actually on fire.

The second class of consequential losses for which the insurers are undoubtedly liable, as referable to the peril insured against as their proximate cause, embraces the cases in which the property insured is extricated from the peril that otherwise would have led to its destruction, by means that could not have been anticipated by the parties, but by which it is *taken from and never again restored to the possession of the assured*, so that to him the loss is exactly the same that it would have been had the peril continued to operate.

The case of *Bondrett* agt. *Hentigg* (1 *Holt's N. P. Rep.* 149; 2 *Arnold on Insurance*, 1005) was cited by the counsel for the plaintiff, as an example of this class of consequential losses. The vessel containing the goods was wrecked on the coast of the Isle of France, and the goods were plundered by the na tives on shore, and Sir VICARY GIBBS held, that the loss was a consequence of the wreck, and, therefore, recoverable as a loss by the perils of the sea. He said that no abandonment was necessary, since the goods which were saved from the wreck, though got on shore, never came again into the hands of the owners. As to them, therefore, the loss was total.

This, although a *nisi prius* decision, is cited with approbation by the text writers, but the cases to which I shall next refer were decided by the court in term, and not only carry with them a greater weight of authority, but are more closely applicable to the question before us.

The first is *Hahn* agt. *Corbett*, (2 *Bing. Rep.* 268.) The loss claimed was upon goods insured on a voyage from London

to Maracaibo, which, by a clause in the policy, were warranted
"free from capture and seizure." The ship containing the
goods, when she had nearly reached her port of destination,
was driven in a storm upon a sand bank, and totally disabled;
and, while thus situated, the goods, that otherwise would have
perished from the peril in which they were involved, were
seized and carried on shore by Spanish royalists, who had
shortly before recovered the possession of the town and port of
Maracaibo. The assured, notwithstanding the warranty in the
policy against seizure, claimed that they were entitled to re-
cover a total loss, upon the ground that the seizure, although
the immediate cause of the loss, was itself a consequence of the
stranding and wreck of the vessel, and that the loss ought,
therefore, to be attributed to the perils of the sea as its proxi-
mate cause. The court sustained the claim of the assured, and
held that the loss was properly described in the declaration as
a loss by the perils of the sea, since it was certain that those
perils were its main conducing cause. It was by their agency
(it was said) that the ship was reduced to a wreck, and it was
by the same agency that the goods, had they not been seized,
would have been destroyed. And in reading the opinion of
the judges, it is manifest that the certain destruction of the
goods by the perils insured against, had they not been seized,
was the main ground of the decision. It was for this reason
alone that those perils were held to be the proximate cause of
the loss. Indeed, the only distinction that can be stated be-
tween this case and those of *Levie* agt. *Jansen*, and *Patrick* agt.
*The Com. Insu. Co.*, before cited, consists in the fact, that in
those the property insured, but for a subsequent event, might
have been saved, while in this it must have been destroyed had
the peril continued to operate.

The most recent case that I have found was decided by the
present court of queen's bench, and in its material circumstan-
ces it not only bears a close analogy to the present, but fur-
nishes a satisfactory answer to an argument that was much in-
sisted on by one of the learned counsel for the defendants,
namely, that the goods upon which the loss is claimed were not

only saved from the peril insured against, but in judgment of law never ceased to be in the possession of the plaintiff.

*Dean and another* agt. *Hornby*, (23 *L. Journ. R. N. S.* 129; 24 *Law and Eq. Rep.* 85,) is the case to which I refer. The insurance was a time policy upon a ship which, during the continuance of the risk, was seized by pirates in the straits of Magellan, but was recaptured by an English ship of war, and taken to Valparaiso. At Valparaiso a prize-master and crew were put on board, and the ship was sent to England for adjudication in the court of admiralty. It was while the ship was in the prosecution of this voyage that the plaintiffs abandoned to the underwriters; and it was agreed that their right to recover a total loss was to be determined by the facts that existed at the time of the abandonment. It is needless, therefore, to take any notice of those that subsequently occurred.

It was insisted, on the part of the defendants, that there was no total loss when notice of abandonment was given. That, although there was a constructive total loss when the ship was seized by the pirates, the property was not changed by the seizure, and, upon the recapture, remained in the owners, and that the recaptors, although they had a lien to the extent of the salvage to which they were entitled, yet, subject to that lien, held possession for the owners. Consequently, so far from there being a total loss, both the property and the possession of the ship were in the assured when they abandoned. Lord CAMPBELL and his brethren were, however, of a different opinion. They held that the constructive total loss created by the piratical seizure, at the time of the abandonment, had not ceased to exist, since, although the ship before that time had been recaptured, yet the possession had not been restored to the assured, nor had they then the means of obtaining the possession. It was true, the property remained in them, but the recaptors had the sole possession and control. Judgment for a total loss was, therefore, given for the plaintiff.

The principle of this decision evidently is, that when circumstances that, by their continuance, would create a total loss, have once existed, the loss continues total, although those cir-

cumstances may have wholly changed, *so long as the property is not beneficially restored to the possession of the assured.*

I have already said, that although the loss now claimed is consequential, yet if it fall within either of the classes that have now been stated and explained, it is recoverable under the policy, as a loss by fire, and that it falls within both classes, is the conclusion to which we have all of us come, with the exception of my brother HOFFMAN. We think that this conclusion is fully justified by the decisions to which I have referred, and which we are not aware are contradicted or shaken by any other authorities.

It cannot be denied, that the facts which I have stated to be the necessary condition of the liability of insurers for consequential losses, other than such as are inevitable, were in this case proved to exist. The goods were removed from a building actually on fire, and which was destroyed by the fire; had they remained their destruction was certain. Under these circumstances, we think the loss as claimed was as a *natural* consequence of the peril insured against.

When the doors of a warehouse or store on fire are broken or thrown open, in order that the goods within, by their removal, may be saved from the peril, a loss of a portion of them by plunder, we cannot but think, is just as certainly a natural consequence of the attempt to preserve them, as the damage which they suffer from the negligence or recklessness of those engaged in their removal. It is a consequence that, from the frequency of its occurrence, may be expected to follow; and which it is therefore reasonable to believe was in the contemplation of the parties when they made their contract.

It is a public and notorious fact, which, as such, we may judicially notice, that in this city, and indeed in all crowded cities, losses from this cause constantly happen; and that from the temptation and facilities that a fire creates, it would be difficult, and almost impossible to prevent them. And when we call to mind the hurry, confusion and disorder that usually prevail, and the habits and character of those who form a large portion of the crowd that usually assemble at a fire, it would

be a matter of great surprise if losses of this description were not as frequent as experience almost daily attests they are.

It was admitted by one of the learned counsel of the defendants, that as petty losses by theft not unfrequently happen, it might not be unreasonable to hold that, for such the insurers are liable, as a natural consequence of the peril insured against; but he contended that, as a loss by theft of the magnitude of that which is now claimed, very rarely occurs, it would be unjust to hold that the defendants even meant to assume the risk, since it cannot be thought that such a loss was in the contemplation of the parties when they made the contract.

The argument is plausible, but it implies a distinction for which there is no warrant or precedent, and to which we cannot assent. The only question is, whether a loss by theft is, from its nature, a consequential loss, for which the insurers are liable, and if this be admitted or proved, their obligation to satisfy the loss, when not exceeding the sum insured, cannot be varied by its amount.

If all the costly furniture of a dwelling-house were defaced and broken by a disorderly crowd volunteering their aid to rescue it from a fire, we cannot believe that the unusual amount of the loss would be held to exonerate the insurers from its payment. And we see no reason to doubt that a loss by theft, if covered by the policy at all, stands upon the same ground.

But were we prepared to say, that the loss now claimed cannot be regarded as a natural consequence of the peril, and is not recoverable upon that ground, it is still certain that the goods upon which it is claimed, before their removal, were involved in a peril that must have led to their destruction, and that, although saved from this peril, they were never restored to the possession of the plaintiff. Hence, unless the cases of *Bondrett* agt. *Hentigg*, *Hahn* agt. *Corbett*, and *Dean* agt. *Hornby*, are to be cast aside, or it can be shown that there is a valid distinction between those cases and the present, the plaintiff must be entitled to recover.

We think that these cases were rightly decided, and, although varying in circumstances, in principle, are not to be distinguished from the present.

It is true, that a valid distinction has been supposed to exist. It has been said, that in each of those cases there was an actual total loss by the perils of the sea, that never ceased to exist, and that its continued existence was in each case the ground of the decision; while in the case before us there was no such loss of the stolen goods before their removal.

But the supposition upon which this argument proceeds, it appears to us, involves a mistake, both of the law and the facts. In neither of the cases referred to was the original loss that is spoken of actually total. It was so only by construction of law. The loss of goods on board a shipwrecked vessel, so long as they subsist in specie, is not actually total. The certainty of their destruction by the perils of the sea, if they remain in that situation, it is true, gives to the assured a right to abandon; but, as Mr. Phillips has justly observed, (1 *Phillips*, 649,) this is a right that the assured is not bound to exercise, and it is only by its exercise before the goods are rescued from the peril and restored to his possession that the loss is rendered total. If the goods are landed, and come again into his possession, or that of his agents, and, at a reasonable expense, may be transported to their port of destination, the right to abandon and claim a total loss is wholly gone, and a partial loss only is recoverable.

It seems to us manifest, therefore, that the true grounds of the decision in *Hahn* agt. *Corbett* (the case that bears the nearest resemblance to the present) were exactly those that have been stated—the certainty that the cargo of the stranded vessel would have been destroyed by the perils of the sea, had it not been seized by the Spanish royalists, and the fact that after the seizure it never came again into the possession of the assured. So here, it is certain that the goods upon which the loss is claimed, had they remained in the store, must have been destroyed by the fire; and equally so that, since their removal, they have never been restored to the possession of the plaintiff,— the loss to him is exactly the same as if they had been consumed by the fire. So far as he is concerned, they were never

rescued from the peril in which they were involved, and which may, therefore, be justly considered the proximate cause of the loss.

There is no ground for the allegation that the goods lost were in the possession of the plaintiff when the loss happened. They were taken from his possession by the persons who removed them, and those persons were in no sense his agents, or subject in any respect to his direction or control. Neither he nor any person acting by his authority was present at the fire. The case, moreover, expressly states that the goods saved were taken possession of by an agent of the insurers, who stored them in a building of which he kept the key; and that this key was not delivered to the plaintiff until the next morning. Until then the goods saved were not restored to his possession. Those that were stolen were at no time after their removal in his possession. The property remained in him, but the possession was gone. (*Dean* agt. *Hornby, supra.*)

The result of this discussion is, that, in our opinion, the jury were rightly instructed upon the trial, and that the plaintiff is entitled to judgment upon the verdict which they rendered, and such is our decision.

An important case was cited upon the argument, (*Levy* agt. *Baillie and others,* 7 *Bing. Rep.* 349,) that hitherto I have omitted to notice; and I refer to it now, not as a positive decision, (which it is not,) but as evidence, satisfactory if not conclusive, that in England consequential losses, of the character of that which is now claimed, are deemed to be recoverable under a policy in which fire is the only risk insured against, and are treated as losses which, in judgment of law, are occasioned by fire. In this case, nearly the whole loss that was claimed was alleged to have resulted from the plunder of the goods insured, by the crowd assembled at the fire. It was denied by the defendants that any such loss had occurred, and the fact was very doubtful upon the evidence; but it was not denied that, if the loss were proved, the defendants, as insurers against fire, were liable for its payment; nor was any doubt as to their liability expressed or intimated, either by the counsel for the defendants

or by any of the judges.   It is true, the question was not raised ;
but as from its nature it could not have escaped the attention
of the parties, we may be certain that it would have been
raised, had not the defendants and their counsel been satisfied
that it was fully settled by law and usage in favor of the
plaintiff.

Finally.   It is certainly not a matter of regret, that a careful
examination of the authorities has led us to the conclusion that
the defendants are responsible, as insurers against fire, for the
loss that is claimed.   It seems to me that a denial of their lia-
bility for such a loss is most unwise ; and I am persuaded that
it is for the interest alike of the public, of the assured, and of
the insurance companies themselves, that the defence should
be overruled.

Judgment for the plaintiff with costs.

HOFFMAN, Justice, dissented.