QUEEN INSURANCE COMPANY, A CORPORATION, *Plaintiff in Error,* v. PATTERSON DRUG COMPANY, *Defendant in Error.*

## Opinion Filed March 20, 1917.

1. A non-waiver agreement may itself be waived by the same acts and doings of an insurance company's adjuster or representative, or by such transactions with the insured, as would amount to a waiver of a forfeiture clause of the policy.

2. Where an insurance company, with full knowledge of the facts out of which a forfeiture arose, by its acts recognized the policy as a valid and subsisting contract, and induced the insured to act in that belief and incur trouble or expense, such action will be a waiver of the condition under which the forfeiture arose.

3. Where a duly authorized agent of an insurance company places insurance with the assistance of another whom he employs to solicit the insurance, and who delivers the policy, collects the premium, and does all the things which the agent himself might do, and to whom he gives the power and authority of a sub-agent with whom the insured deals in all matters connected with the application for the policy and its receipt, and to whom he pays the premium, the insurance company cannot escape responsibility for his acts, even if he is not designated or regularly appointed by the agent or the company, as an agent.

4. It is the duty of the insured to use all reasonable means to save and preserve insured property from impending loss or

damage from fire, and if while moving it from threatened destruction or damage, or after it is removed, and before he has had time to put it in a place of safety, any of the goods are stolen, the theft is a consequence flowing from the peril insured against and incident thereto, and the insured may recover for the loss of goods by theft.

5. The restriction in an insurance policy against loss of goods by theft, is incompatible with the requisite that the insured shall use all reasonable means to save them from impending destruction or damage from fire.

6. Where there are conflicting clauses in an insurance policy, the one which affords the most protection to the insured will control.

7. Where an insurance policy under penalty of non-recovery, requires the insured to do something which will almost inevitably result in a loss, the company cannot escape liability by a restriction in the policy that it will not be liable for a loss occurring as a result of the insured performing the required act.

Writ of Error to Circuit Court for Jackson County; Cephas L. Wilson, Judge.

Judgment affirmed.

*Paul Carter,* for Plaintiff in Error;

*Smith & Davis,* for Defendant in Error.

BROWNE, C. J.—The defendant in error, the plaintiff below, brought suit against the Queen Insurance Company of America in the Circuit Court of Jackson County upon a fire insurance policy. A trial was had on the issues which resulted in a verdict and judgment for plaintiff, and defendant sued out writ of error. The declaration is substantially in statutory form, and a copy of the

insurance policy sued on is attached thereto and made a part of the declaration.

Five pleas were filed by the defendant, which are in substance as follows: The first plea denies that plaintiff was damaged as alleged; the second plea avers that plaintiff did not within sixty days render such a statement of the loss and circumstances surrounding same as required by the policy; the third plea avers that plaintiff "allowed" gasoline on the premises, without an agreement permitting it, being endorsed on the policy; the fourth plea is to the same effect, except that it charges that gasoline was "used" on the premises without endorsement of the agreement permitting it; the fifth plea avers that plaintiff did not protect the property and did not separate the damaged and undamaged property, but negligently permitted it to remain unprotected and unseparated and in bad order.

The plaintiff filed eight replications, joining issue on the first and fifth pleas, and defending as to the others. A demurrer was interposed to the second, third, fourth, fifth, sixth and seventh replications, which was sustained as to the fourth replication, and overruled as to all the others.

The first error assigned is based on the court's overruling this demurrer. The plaintiff in error abandons any claim of error in this ruling as to all but the sixth and seventh replications.

The sixth replication in substance admits that the store in which the insured articles were kept, was lighted by artificial gas or vapor generated from gasoline kept in a tank outside the building and more than three feet from any opening in the building, and was conducted into the store through pipes connected with a gas machine outside the building; and alleges that the lighting apparatus was standard in design and installation of a type ap-

proved by the National Board of Fire Underwriters and permitted without extra charge by all Fire Insurance Companies writing business in the town of Malone, Florida, including the defendant; that the gasoline kept for sale was outside the building in street near premises; that the system of lighting had been in use and operated in the building, and gasoline so kept for sale for a period of three years or more before the policy was issued and was apparent to anyone, including defendant's agent and subagent inspecting the building; all of which was known and should have been known to defendant at the time of delivering the policy and accepting the premium for same; that the policy was issued upon the verbal application of plaintiff and no question was asked, nor representations made as to the existence or non-existence of the lighting system, or keeping gasoline, and no notice was given the plaintiff that the continued use of said lighting system or keeping of gasoline would render the policy void; that the gasoline used and allowed on the premises was gasoline allowed and permitted by the Fire Insurance Companies, including the defendant, without extra charge; that the adjuster sent by defendant to Malone to investigate the origin and extent of the fire and all matters alleged in the pleas, with full knowledge of matters and things set forth in the pleas never raised any question as to any of the matters set forth in either of said pleas as being prohibited, nor has defendant with full knowledge of the alleged use of gasoline ever in any manner protested against such use, or as being prohibited by the terms of the policy before the suit was brought; the plea concludes with the allegation that the matters set up in the third and fourth pleas, if they ever existed, were before this suit waived by the defendant.

The waiver contended for by this replication is based

upon two sets of acts—the one, those of the agent who procured the policy and who had knowledge of the use of gasoline before and at the time he procured and delivered the policy, and the other the non-action or passiveness of the adjuster who went to Malone after the fire. The plaintiff in error attacks the ruling of the court for overruling his demurrer to this replication because mere passiveness on the part of the Insurance Company or its adjuster is not enough. It is true that this court quoted from Titus v. Glens Falls Ins. Co., 81 N.Y. 410, to the effect that "a waiver cannot be inferred from its mere silence," but mere passiveness may be sufficient under certain circumstances, to amount to a waiver.

It is not necessary, however, to determine whether or not the passiveness of the adjuster in this case amounted to a waiver, because the other averments in the replication show acts of the agent of the insurance company which clearly do so. Further, the plaintiff in error admits, that "if the agent of the defendant saw the gas machine before the policy was written, such fact would tend strongly to support the claim of waiver." The knowledge of the agent of the facts set forth in this replication was the knowledge of the Insurance Company, and when it delivered the policy to the insured with full knowledge of these conditions it consented to the continued use of gasoline outside the building for generating an illuminating gas or vapor for use in the building, and also for the continued sale by the insured of gasoline which was kept in a tank outside the building and more than three feet away from it. The demurrer to this replication was properly overruled.

It is contended that the demurrer to the seventh replication should have been sustained because it is a mere affirmation that the plaintiff did the things which defendant

says in his fifth plea he did not do.   Whether this is so or not, no harm was done the defendant by the court refusing to sustain the demurrer to the replication upon that ground alone.   It may have been bad pleading, but we are not prepared to say that bad pleading which works no harm is reversible error.   Further than this, the plaintiff joined issue on the third plea.   The demurrer to this replication was properly overruled.

The defendant filed a rejoinder to the plaintiff's second, third, fourth, fifth, sixth and seventh replications, in which he avers substantially that before defendant made any investigation of the loss, and took any documents or data or other matter set up in the fourth replication, the plaintiff and defendant entered into an agreement and stipulated in writing in substance and to the effect that any action taken by defendant, or request made, or information received in and while investigating and ascertaining the cause of the fire, the amount of the loss, or damage or other matter relative to plaintiff's claim, should not change, waive or validate or forfeit any of the terms, conditions or requirements of the policy sued on; that the agreement further stipulated that it was the intention of the plaintiff and defendant to permit an investigation of plaintiff's claim and a determination of the amount of the loss or damage, without prejudice of any right or defense which defendant might have; and that a copy of the agreement was attached and made a part of the rejoinder.   To this rejoinder, plaintiff filed the following demurrer:

"1.   Said rejoinder is vague, indefinite, uncertain and does not sufficiently set forth facts which in law will avoid the allegations of said replication.

"2.   A copy of said non-waiver agreement is not attached to said rejoinder nor does said rejoinder purport to give all the terms and stipulations of said agreement.

"3. The rejoinder does not allege any consideration of the said alleged non-waiver agreement.

"4. It is not alleged that said non-waiver agreement was entered into without notice on the part of the defendant and its agents of the existence of the facts constituting the forfeiture of said policy as alleged in defendant's said plea of rejoinder.

"5. That said non-waiver in said rejoinder is simply declaratory of the non-waiver stipulation already contained in said policy, and does not constitute a bar to the waiver created by the defendant's adjuster proceeding to investigate said loss with a view to adjustment, and take proofs, and requiring the plaintiff to submit proofs, touching plaintiff's alleged loss, the liability of the defendant therefor, and the amount of damages thereby."

The Circuit Judge sustained this demurrer, and his ruling is made the basis of the second assignment of error. We find no error in this ruling. The matters stated in the rejoinder, in substance, amounting to a repetition of the non-waiver stipulation contained in the policy; there was no consideration moving the plaintiff to enter into this new agreement; the non-waiver agreement is not attached to the rejoinder, and it does not purport to give all the terms and stipulations of the agreement. As a non-waiver agreement may itself be waived by the same acts and doings of the insurance company's adjuster or representative, and by such transactions with the assured as would amount to a waiver of the forfeiture clause of the policy, we cannot see that this agreement would have afforded the defendant any defense which he did not have on the issues presented by the anterior pleadings. As to non-waiver agreement itself being waived, see Pennsylvania Fire Ins. Co. v. Draper, 187 Ala. 103, 65 South. Rep. 923; Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla.

268, 35 South. Rep. 171 ; Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947; Pennsylvania Fire Ins. Co. v. Hughes, 108 Fed. Rep. 497, 47 C. C. A. 459.

In the case of Corsan v. Anchor Mut. Fire Ins. Co., 113 Iowa 641, 85 N. W. Rep. 806, the court said: "Appellant contends, however, that by signing what is called a 'non-waiver agreement' the insured cut himself off from relying on these facts of the adjuster as constituting a waiver of the forfeiture. It appears that the adjuster, after having acquired knowledge of how the books had been kept, insisted that before he would proceed with the adjustment of the loss the insured should sign this agreement, by which it was stipulated that 'nothing said adjuster may do or say or write shall in any way be construed as waiving any of the rights or defenses of said company, or any conditions or requirements of said policy as to proofs of loss or otherwise." With reference to the forfeiture in question, it seems to us that this agreement was wholly immaterial. The adjuster must be presumed to have had the power to waive a forfeiture. Brown v. Insurance Co., 74 Iowa 428, 38 N. W. 135; Ruthven v. Insurance Co., 102 Iowa 550, 560, 71 N. W. Rep. 574; Brock v. Insurance Co., 106 Iowa 30, 75 N. W. Rep. 683. He did not proceed to adjust the loss, and required the insured to furnish proofs, including the procurement of the duplicate invoices, notwithstanding his knowledge of the facts amounting to a forfeiture. The non-waiver clause was in itself a part of the adjustment. It had nothing to do with the fact of forfeiture, and was entered into with knowledge of that fact. The adjuster could not by his own stipulation deprive himself of the power to waive this forfeiture; nor could he, for that matter, deprive himself of the power to waive his own stipulation for non-waiver. It is well setttled that even the stipulations

of a policy to the effect that they shall not be waived except in writing may themselves be waived by an officer or agent having authority.    Viele v. Insurance Co., 26 Iowa 9, 59."

We quote approvingly from the opinion of GRANGER, J., in the case of Antes, Gain & Co. v. Western Assurance Co., 84 Iowa 355, 51 N. W. Rep. 7, "Where a company, with full knowledge of the facts out of which the forfeiture arose, by its acts recognized the policy as a valid and subsisting contract, and induced the plaintiff to act in that belief and to incur trouble and expense, such action would be a waiver of the condition under which the forfeiture arose."

The third, fourth and fifth assignments relate to questions propounded to N. B. Solomon, a witness for the plaintiff.    Solomon was Cashier of the Bank of Malone and was also engaged in writing fire insurance.  He placed the policy sued on through W. H. Milton who wrote the insurance; he delivered the policy to plaintiff who paid him the premium, which he sent to Mr. Milton, less his brokerage.   He says at the time and before this policy was written, he knew the place of business of the plaintiff, and was familiar with the store, its contents and what was inside of it, and so on; that the property was across the street from his place of business, and he went over there quite often.    Five questions were propounded to him which were objected to by defendant on the ground that the witness was not the agent of the defendant and his knowledge would not bind him, but he was permitted to answer them, and upon this the errors in these assignments are predicated.    The answers of the witness were very full and clear that he had knowledge of the lighting system used by plaintiff, that he knew he sold gasoline which he kept outside the building, and that he had never

seen in the published tariffs of the insurance companies any extra charge for permitting the lighting system used by plaintiff, or for the sale of gasoline outside the building, and he did not think a permit was required for these things.

The question raised by these assignments is, was there such a relation between this witness and the insurance company as would bind the company by his acts? The testimony was very material, for it went to show the knowledge of the defendant at and before it issued its policy, of the facts upon which it relies for a forfeiture, whereby the plaintiff claims the insurance company waived its right thereto.

Section 2765 General Statutes of Florida, 1906, provides. "Any person or firm in this State, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual, aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal thereof, although such policy of insurance is not signed by him or them, as agent or representative of such company, association, firm or individual, or who in any wise directly or indirectly makes or causes to be made, any contract or insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual. Chap. 1863, Acts of 1872, Sec. 7. Amended by Chap. 4380, Acts of 1895, Sec. 7.

Section 2777, General Statutes, 1906, provides: "Any person who solicits insurance and procures applications therefor shall be held to be agent of the party issuing a

policy upon said application, anything in the application or policy to the contrary notwithstanding.". Chap. 4677, Acts of 1899, Sec. 3.

Under these provisions of our law the witness Solomon was unquestionably the agent of the Queen Insurance Company in so far as this policy is concerned.

Texas has a statute of simlar effect to ours. It provides: "Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter." Art. 3093, Rev. Stats. of Texas, 1895.

In passing on this statute the Supreme Court of Texas said: "The insurance on the building was solicited and effected by one Lee Lacy, who, the testimony tends to show, was informed and knew of certain incumbrances

on the property when he procured its insurance; and the court charged the jury 'that if, from the evidence, they should believe that Lee Lacy, at the time he procured the insurance to be written, knew of such incumbrances, to return a verdict for the full amount of the policy.' This charge is assigned as error upon the ground that it assumes Lee Lacy was the agent of the company; and the evidence shows that he was a mere insurance broker, and his knowledge could not and did not bind the insurance company. Lacy may have been technically merely an insurance broker, yet the fact that he solicited the insurance on behalf of appellant company requires him to be held its agent."

In a Dakota case for the loss by fire of a hotel in Crescent City, Florida, our statute of 1872, before its amendment in 1895, was offered in evidence and its provisions invoked in support of the contention that a firm of insurance brokers who placed the insurance, were the agents of the company. The court held that they were such agents of the insurance company "as to have power to waive the matter of incumbrances, which were known to them at the time of negotiating and accepting the risk for the company, irrespective of the Florida statute offered in evidence." Lyon v. Insurance Co. of Dakota, 6 Dak. 67, 50 N. W. Rep. 483.

Where a duly authorized agent of an insurance company places insurance with the assistance of another whom he employs to solicit the same and who delivers the policies, collects the premium, and does all things which the agent himself might do, and to whom he gives the powers and authority of a sub-agent with whom the insured deals in all matters connected with the application for the policy, and its receipt, and to whom he pays the premium, even if he is not regularly appointed by the

agent or the company as an agent, the company cannot avoid responsibility for his acts. In a Vermont case this question was presented and the court said: "The first question presented by the exceptions is whether J. D. Butler in the matter of taking the application for the insurance in question, was so far acting for the defendant company as to make his knowledge of errors in such application knowledge in the company, and thus estop the company from claiming a forfeiture therefor. It appears that Manley was a duly authorized agent of the company at West Rutland; that Butler was in his office, and engaged to some extent in drumming for insurance, and that he and Manley divided the fees payable upon accepted applications in a proportion agreed upon between them. Butler, however, was not himself appointed or recognized by Manley or the company, as an agent. When the application of the plaintiff was returned by the company for further information respecting the occupancy of the store and the ownership of the goods therein, Manley 'Handed it to Butler and requested him to go out and get the reply, and that Mr. Butler took the same and shortly after brought it back with the additional answers in Mr. Butler's handwriting.' This is the defendant's evidence on this point, and upon it we are clear that the act of obtaining the reply to the company's questions was in legal significance the act of Manley, rather than Butler. Butler was expressly directed by Manley to do this service, and in doing it he acted merely as the hand of Manley, and as the latter was confessedly the defendant's agent, this act was one done by its agent and in obedience to the company's direction. It is thus wholly unnecessary to consider the able argument of the defendant's counsel upon the question of Manley's power to create a subagent, or whether Butler had any of the functions of

agency in the transaction. The business was done by Manley and he ran the risk of any perils that might affect the company incident to it. It would be a dangerous doctrine to promulgate, if we held that the company could avoid its responsibilities by repudiating the acts of its own agents if they happened in large towns to be done in part by the assistance of persons employed by such agents. Mullin v. Vermont Mutual Fire Ins. Co., 58 Vt. 113, 4 Atl. Rep. 817." What the court said about the acts of agents if they happened in large towns, applies with equal force to an agent who may be the only agent of the company in a county, and who authorizes and employs persons in other towns in the county to so-. licit insurance, deliver the policies and collect the premiums.

It is clear that by virtue of Section 2765 and 2777 General Statutes, 1906, Solomon was an agent of the company, and these statutes in that respect are but the legislative expression of the law as laid down in well reasoned authorities. In dealing with him the insured dealt with the company itself; his knowledge was the company's knowledge, his consent was its consent. Eagle Fire Ins. Co. v. Lewallen, 56 Fla. 246, 47 South. Rep. 947; Hartford Fire Ins. Co. v. Brown, 60 Fla. 83, 53 South. Rep. 838. "Where it is known to the insurance agent at the time the policy was effected that the assured kept a prohibited article, and intended to keep it, in the building insured, the keeping it would not render the policy void, whether permission to keep it was indorsed, or intended to be indorsed." Peoria Marine Ins. Co. v. Hall, 12 Mich. 202.

The sixth and eighth assignments refer to questions propounded to Dr. Patterson when testifying in his own behalf, on the ground that they called for testimony in re-

lation to an offer of compromise.   The questions objected
to and the answers are as follows:  Q.  "Did they raise
any protest, or kick, or deny liability on account of either
of those?"   A.   "They did not."   Q.   "After they went
there and made all investigations did they make you an
offer or  either of  them make  you an offer at all?"   A.
"They did."   Q.   "How much?"   A.   ."Mr. Dorgan of-
fered me $600.00."

There is nothing in this testimony to show that there
was any proposition in the nature of a compromise; but
if there had been, the plaintiff in error concedes that this
testimony may have been admissible upon the question of
the waiver of proofs of loss set up in the second replica-
tion.   If it was admissible for this or any purpose, there
was no error in allowing it to go to the jury.

The ninth and tenth assignments are based on the re-
fusal of the Circuit Judge to give two charges requested
by defendant, as follows:

"1.   The insurance company is not liable for loss of
goods through theft, and if any of the goods were stolen
the defendant is not liable for those goods."

"2.   The plaintiff must prove by a preponderance of
the evidence that the goods and fountain were damaged
or destroyed by moving from the fire.   If he has failed to
show you in what manner he lost the goods, whether by
breakage or theft, you cannot allow in your verdict for
any goods  except those  shown to have been  broken or
damaged."

The first charge is entirely too broad, and to meet the
isues should have stated the circumstances under which
any theft occurred. Clearly the insurance company is not
liable for any and all thefts which may occur, and this
charge is not so framed as to meet the issues presented by
the testimony.

The second charge is open to the objection that it combined two distinct and separate propositions of law. The first sentence in the charge is good law, and the court had fully covered it in his general charge. The second part of the charge assumes that the testimony showed that part of the goods were stolen. The testimony as to theft was entirely negative, and to have given this charge would have only confused the issues, as there was no testimony to support the theory of theft.

· On cross-examination Mr. Patterson, the plaintiff below, said: "I don't know whether any of the goods were stolen." "If there were any goods stolen I don't really know it." Mr. Von Hasseln, the adjuster, testified that he asked Mr. Patterson to explain the discrepancy in the amount of goods in his inventory and the amount of goods saved, and he "said he couldn't account for it. He said he presumed the gods were either stolen or broken." Dr. Patterson's testimony about the goods being removed from his store said: "This fire occurred between two and three o'clock in the morning. I think it was about the time. I would not suppose it was more than an hour and a half after the goods were moved into the street before they were moved from the street. It was still in the night when they were being moved. Just my friends and neighbors moved the goods. Just the public generally. Yes, sir; and my wife and the boy working in the store and one or two helped to watch after them to keep any from being carried away; in fact there were several detailed to watch to see that none were carried away."

Notwithstanding our opinion that the evidence did not show that any of the goods were stolen, it may be well for us to determine the question raised by the rejection of these charges: Did this policy cover losses from damage, breaking and theft, while removing the stock or af-

ter it was so removed from impending destruction or damage by fire, and before there had been sufficient time to remove it to a place of safety, if such damage, breaking and theft were the natural results of such removal? We answer that question in the affirmative. There is some conflict of authorities on this point, but we think that those which hold that the policy covers loss by theft of goods removed or being removed in an effort to save them from impending peril from fire, are supported by wisdom and justice, and are in line with the tendency of the courts to hold that conditions in a policy of insurance, limiting or avoiding liability will be strictly construed against the insurer, and liberally in favor of the insured. Queen Ins. Co. v. Young, 86 Ala. 424, 5 South. Rep. 116; Loventhal v. Home Ins. Co., 112 Ala. 108, 20 South. Rep. 419; L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 South. Rep. 462; Caledonian Ins. Co. v. Smith, 65 Fla. 429, 62 South. Rep. 595.

The policy sued on contains this condition: "This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority; or by theft; or by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises."

The testimony shows that a fire occurred between two and three o' clock in the morning of February 23rd, 1915, which burned the buildings adjoining the plaintiff's store, and that the building his insured goods were in, was about to be on fire, and caught on fire; and that he moved his goods to save them from the fire.

It was clearly the duty of the insured to remove the goods when the danger of destruction was so imminent

and impending as to create a reasonable apprehension that unless he did so they would be destroyed, and the circumstances as they exist at the time must determine the necessity for removal; and if while so doing, or after such removal any of the goods are stolen, the theft being a consequence flowing from the peril insured against and incident thereto, is attributable to the peril itself.

In the case of Leiber v. Liverpool, London and Globe Ins. Co., 6 Bush (Ky.) 639, 99 Am. Dec. 695, the policy sued on contained this condition: "That this company will not be liable for any loss or damage to goods contained in the show window when the loss or damage is caused by the light in the window; nor shall the company be liable to loss by theft." There was fire in an adjoining building and the insured commenced removing his goods, and in doing so, some were stolen. The court held that the policy covered loss by theft, in the necessary and prudent removal of goods to save them from threatened destruction by fire. It is true, the court reached its conclusion by construing the condition against loss by theft, to apply to "theft from the show windows." While we quite agree with the decision in that case, we think it could have been put on much stronger grounds.

There are many decisions which hold that the insured is protected against loss by theft, when he is using all reasonable means to save the property from destruction by fire as he is required by the policy to do under penalty of forfeiture. The following extracts are enlightening upon this point:

"We cannot doubt that where there is an actual fire and the goods are removed by reason of imminent danger, occasioned by such fire, and the insured exercises his utmost exertions to protect and secure the property, any loss arising from a larceny of the goods is within the

risks insured against, and must be borne by the insurer. Witherell v. Maine Ins. Co., 49 Me. 200."

."The liability of an insurance company for losses by thefts occurring at the time of the fire is not restricted to such losses occurring during the continuance of the fire merely; if the loss by theft be occasioned directly by the fire, the insurer will be liable though it happen after the extinguishment of the fire. Newmark v. Liverpool and London Fire and Life Ins. Co., 30 Mo. 160."

"Throwing the water and removing the goods, were acts done for the purpose of saving them, and the injury caused by the goods being thereby wet and soiled, certainly constituted a part of the damage, and we think the value of the goods that were stolen, falls under the same principle, being a loss incident to the attempts to save them. For whose benefit was the attempt made? For that of the defendant; and as the goods that were saved were allowed in mitigation of the damages, the objection, that the portion of them that were lost ought not to be paid for, is made with an ill grace. Had the plaintiff and his wife, instead of exerting themselves in removing the goods, and putting them back as soon as the danger was over, stood listlessly by and permitted them to be burnt up, they would have been obnoxious to the charge of gross negligence. Underwriters are liable when the fire is the act of an incendiary and, a fortiori, are they liable for the depredations of thieves who avail themselves of the exposure which is unavoidable on such occasions, and which is incident to the attempt to save the goods for their benefit. Whithurst v. Fay. M. Insurance Co., 6 Jones' Law (N. C.) 352."

In Talamon & Co. v. Home and Citizens' Mut. Ins. Co., 16 La. Ann. 426, the court quoted approvingly from the case of Caballero v. Home Ins. Co., 15th Annual p.

217: "When the policy compels the assured to labor for the protection of the goods, and they are insured or stolen in the attempt to avoid the fire, the insurance company is responsible."

"Where the policy requires the insured in case of exposure to loss or damage by fire, to use all possible diligence to preserve his goods, and provides that in case he does not do so, the insurers shall not be liable for any loss sustained in consequence of such neglect; if the insured shall remove his goods, the circumstances, as they existed at the time the removal was made, must determine the necessity for the removal; and whatever loss or damage is necessarily sustained by the removal of the property insured, when the danger of its destruction by fire was so direct and immediate, that a failure to have made the removal while he had the power, would have been gross negligence on his part, he is entitled to recover under the policy. Case v. Hartford Fire Ins. Co., 13 Ill. 676."

In Tilton v. The Hamilton Fire Ins. Co., 1 Bosw. (N. Y. Sup. Ct.) 367, a fire destroyed the building in which the goods were kept, and if they had not been removed, they would have been entirely consumed by fire. The goods were taken out by the Insurance Watch and put across the street. In discussing what is meant in an insurance policy by "a loss by fire," the court said: "The fire created a necessity of immediately removing the goods, in order to save the whole or part of them from being burned up. In making such removal, even if all be removed before the fire reaches that part of the building from which they were taken, a loss, in spite of all precautions, may be produced by at least two causes incident to such an act. One is, a partial injury of some of the goods themselves, by their hurried removal, and the confused state in which they may necessarily for a time be

thrown together. Another is, from a theft, or abstraction of some of the goods. If these are not natural results, it is believed that common experience shows that both, in large cities, are almost invariably inevitable results."

It might be sufficient to rest our decision of this point on the case of Leiber v. London and Liverpool and Globe Ins. Co., cited *supra*, and hold that the words "or by theft" mean theft from the place where they were kept, independent of fire being the proximate cause of the loss, but we think we can place it upon sounder grounds. In the same clause of the policy which attempts to exempt the insurer from loss "by theft," there is a disclaimer of liability for loss caused "by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises," and the obligation is thus placed on the insured to "use all reasonable means" to try to save it from destruction by fire. It cannot be expected that the insured alone, would be able to remove much of a stock of goods, when the building where they were kept, or neighboring premises were on fire, and he must avail himself of all proffered help. He has no time to test the skill or integrity of those who may volunteer to help him, nor can he so direct operations as to designate exactly where the goods shall be put; and common experience teaches us that where the public assists in saving goods from impending fire, they are generally scattered over considerable area, where it is impossible for the insured to guard them, and in communities which have no fire police or adequate police protection to meet the extraordinary contingencies of a conflagration, losses by theft may reasonably be expected. In the case of Tilton v. Hamilton Fire Ins. Co., 1 Bosw. 367, the

court said that "common experience shows that theft, or abstraction of some part of the goods, when removed from a building to save them from impending destruction by fire, are almost invariably inevitable results."

Theft therefore being an "almost invariably inevitable result" from the efforts of the insured to save the property from destruction by fire, we are confronted with the proposition that the insured under penalty of forfeiture must do certain things, the inevitable result of which is to bring about a condition under which he cannot recover. The restriction against recovery from loss of goods by theft, while being removed or after their removal, from impending peril from fire, is incompatible with the requisite that he shall use all reasonable means to save them, and if one or the other must be rejected, the more reasonable should remain. Which of these two conflicting claims afford the most protection to both insurer and insured? Unquestionably it is better that part of the goods removed to save them from destruction by fire should be lost by theft, than that they should be left to be entirely consumed. Wisdom and reason support our construction, and we do not have to resort to the rule that insurance contracts will be construed most strongly against the insurer, for the construction which we place on that clause is in his interest, rather than in the interest of the insured. Construing these two provisions of the policy together we are forced to the conclusion that the insurer is liable for theft which occurs as the result of the insured removing the goods from a building where they are threatened with destruction by fire, whether such thefts occur while removing them, or after they are removed, and before the insured has had time to put them in a place of safety.

In L'Engle v. Scottish Union & National Fire Ins.

Co., 48 Fla. 82, 37 South. Rep. 462, the doctrine governing the construction of conflicting clauses in an insurance policy was thus laid down: "In construing the different provisions of a contract of insurance, all must be so construed, if it can be reasonably done, as to give effect to each. Where two interpretations equally fair may be given, that which gives the greater indemnity will prevail. If one interpretation looking to the other provisions of the contract and to its general object and scope would lead to an absurd conclusion, such interpretation must be abandoned, and that adopted which will be more consistent with reason and probability. In all cases the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which in making the insurance it was his object to secure."

It is apparent that these two provisions of the policy cannot both be strictly enforced, and to hold that the insured under penalty of non-recovery, must do something which will inevitably cause a loss for which he cannot recover, would be an absurd interpretation which this court has said must not be adopted.

The eleventh and twelfth assignments are abandoned. The thirteenth relates to the refusal of the Circuit Judge to grant a new trial. As all the points of law raised therein have been fully covered in this opinion, there only remains the ground that the verdict was contrary to the evidence. We do not so find. There was sufficient evidence to support the verdict.

The judgment of the Circuit Court is affirmed.

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.